AGER *v.* MURRAY.

A patent-right may be subjected by bill in equity to the payment of a judgment debt of the patentee.

APPEAL from the Supreme Court of the District of Columbia. The case is stated in the opinion of the court.

Submitted on printed briefs by *Mr. Thomas T. Crittenden* and *Mr. Warwick Martin* for the appellants, and by *Mr. Lemon G. Hine* and *Mr. S. T. Thomas* for the appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This is a bill in equity by a judgment creditor to subject to the payment of his debt the interest of his debtor in patent-rights. The case was heard in the Supreme Court of the District of Columbia upon bill and answers, by which it appears to be as follows: —

.On the 10th of April, 1876, Talbot C. Murray, in an action at law upon a promissory note, recovered judgment against Wilson Ager for the sum of $2,164.66, with interest and costs. Upon that judgment a writ of *fieri facias* was issued, and returned *nulla bona.* Wilson Ager had no real or personal property in the District subject to execution at law, but was the owner of sundry letters-patent issued to him by the United States for useful inventions, which, if sold, would produce more than enough money to satisfy that judgment. On the 26th of September, 1876, he conveyed all his right and interest in these letters-patent to the other defendant, Elisha C. Ager, who owned an equitable interest of one-third therein, and who, on the 8th of October, 1877, reconveyed the patent-rights to Wilson by an assignment which was not recorded in the Patent Office. Wilson Ager resides in the District of Columbia, and. the other defendant resides in the State of California, and both have appeared in the cause and answered to the merits of the bill.

The bill prays for an injunction against further assignment pending the suit, and that the patents be sold under the direction of the court, and the proceeds of the sale applied to the payment of the judgment debt, and the defendant, Wilson Ager, be required to execute such assignment as may be necessary to vest title in the purchaser or purchasers, in conformity with the patent laws, and for further relief. The decree is,. that in default of his paying by a certain day the judgment mentioned in the bill, with interest and costs, and the costs of this suit,. the patent-rights be sold and an assignment thereof executed by him as prayed for, and that, in default of his executing such assignment, some suitable person be appointed trustee to execute the same.

From that decree the original defendants have appealed to this court; and the single question argued before us is whether a patent-right may be ordered by a court of equity to be sold and the proceeds applied to the payment of a judgment debt of the patentee.

A patent or a copyright, which vests the sole and exclusive right of making, using, and vending the invention, or of publishing and selling the book, in the person to whom it has been

granted by the government, as against all persons not deriving title through him, is property, capable of being assigned by him at his pleasure, although his assignment, unless recorded in the proper office, is void against subsequent purchasers or mortgagees for a valuable consideration without notice. Rev. Stat., sects. 4884, 4898, 4952, 4955. And the provisions of the patent and copyright acts, securing a sole and exclusive right to the patentee, do not exonerate the right and property thereby acquired by him, of which he receives the profits, and has the absolute title and power of disposal, from liability to be subjected by suitable judicial proceedings to the payment of his debts.

In England it has long been held that a patent-right would pass by an assignment in bankruptcy, even without express words to that effect in the Bankrupt Act. *Hesse* v. *Stevenson*, 3 Bos. & Pul. 565; s. c. Davies, Pat. Cas. 263; *Longman* v. *Tripp*, 2 New Rep. 67; *Bloxam* v. *Elsee*, 1 Car. & P. 558; s. c. Ry. & M. 187; 6 Barn. & Cress. 169; 9 D. & R. 215; *Mawman* v. *Tegg*, 2 Russ. 385; *Edelsten* v. *Vick*, 11 Hare, 78; *Hudson* v. *Osborne*, 39 L. J. N. S. Ch. 79. In *Hesse* v. *Stevenson*, Mr. Justice Chambre, in the course of the argument, said: " The right to the patent is made assignable; why then may it not be assigned under a commission of bankrupt?" 3 Bos. & Pul. 571. And Lord Alvanley, delivering the unanimous judgment of the court, after observing that it was contended " that the nature of the property in this patent was such that it did not pass under the assignment," and " that although by the assignment every right and interest, and every right of action, as well as right of possession and possibility of interest, is taken out of the bankrupt and vested in the assignee, yet that the fruits of a man's own invention do not pass," said: " It is true that the schemes which a man may have in his own head before he obtains his certificate, or the fruits which he may make of such schemes, do not pass, nor could the assignee require him to assign them over, provided he does not carry his schemes into effect until after he has obtained his certificate. But if he avail himself of his knowledge and skill, and thereby acquire a beneficial interest, which may be the subject of assignment, I cannot frame to myself an

argument why that interest should not pass in the same manner as any other property acquired by his personal industry." 3 Bos. & Pul. 577, 578. The recent Bankrupt Act of the United States, in defining what property should vest in the assignee in bankruptcy, expressly enumerated " all rights in equity, choses in action, patent-rights, and copyrights," and required the assignee to sell all the property of the bankrupt for the benefit of his creditors. Rev. Stat., sects. 5046, 5062–5064. The only difference is, that in England all such rights pass that become vested in the bankrupt before he obtains a certificate of discharge, whereas here only those rights pass which belong to him at the time of the assignment.

It has been said by an English text-writer that " a patent-right may be seized and sold in execution by the sheriff under a *fieri facias*, being in the nature of a personal chattel." Webster on Patents, 23. We are not aware of any instance in which such a course has been judicially approved. But it is within the general jurisdiction of a court of chancery to assist a judgment creditor to reach and apply to the payment of his debt any property of the judgment debtor, which by reason of its nature only, and not by reason of any positive rule exempting it from liability for debt, cannot be taken on execution at law; as in the case of trust property in which the judgment debtor has the entire beneficial interest, of shares in a corporation, or of choses in action. *M'Dermutt* v. *Strong*, 4 Johns. (N. Y.) Ch. 687; *Spader* v. *Hadden*, 5 id. 280, and 20 Johns. (N. Y.) 554; *Edmeston* v. *Lyde*, 1 Paige (N. Y.), 637; *Wiggin* v. *Heywood*, 118 Mass. 514; *Sparhawk* v. *Cloon*, 125 id. 263; *Daniels* v. *Eldredge*, id. 356; *Drake* v. *Rice*, 130 id. 410.

In *Stephens* v. *Cady* (14 How. 528), and again in *Stevens* v. *Gladding* (17 id. 447), the point decided was that, by a sale of the copperplate engraving of a map on execution from a State court against the owner of the copyright, the purchaser acquired no right to strike off and sell copies of the map.

Mr. Justice Nelson, in delivering judgment in *Stephens* v. *Cady*, said: " The copperplate engraving, like any other tangible personal property, is the subject of seizure and sale on execution, and the title passes to the purchaser the same as if made at a private sale. But the incorporeal right, secured

by the statute to the author, to multiply copies of the map by the use of the plate, being intangible, and resting altogether in grant, is not the subject of seizure or sale by means of this process, — certainly not at common law. No doubt the property may be reached by a creditor's bill, and be applied to the payment of the debts of the author, the same as stock of the debtor is reached and applied, the court compelling a transfer and sale of the stock for the benefit of creditors." He then cited the cases in Johnson's and Paige's Reports, above referred to, and added: " But in case of such remedy, we suppose, it would be necessary for the court to compel a transfer to the purchaser, in conformity with the requirements of the copyright act, in order to vest him with a complete title to the property." 14 How. 531.

In *Stevens* v. *Gladding*, Mr. Justice Curtis said: " There would certainly be great difficulty in assenting to the proposition that patent and copyrights, held under the laws of the United States, are subject to seizure and sale on execution. Not to repeat what is said on this subject in 14 How. 531, it may be added, that these incorporeal rights do not exist in any particular State or district; they are coextensive with the United States. There is nothing in any act of Congress, or in the nature of the rights themselves, to give them locality anywhere, so as to subject them to the process of courts having jurisdiction limited by the lines of States and districts. That an execution out of the Court of Common Pleas for the County of Bristol, in the State of Massachusetts, can be levied on an incorporeal right subsisting in Rhode Island or New York, will hardly be pretended. That by the levy of such an execution the entire right could be divided, and so much of it as might be exercised within the county of Bristol sold, would be a position subject to much difficulty. These are important questions, on which we do not find it necessary to express an opinion, because in this case neither the copyright, as such, nor any part of it, was attempted to be sold." 17 How. 451. The difficulties of which the learned justice here speaks are of seizing and selling a patent or copyright upon an execution at law, which is ordinarily levied only upon property, or the rents and profits of property, that has itself a visible and tangible

existence within the jurisdiction of the court and the precinct of the officer; and do not attend decrees of a court of equity, which are *in personam*, and may be enforced in all cases where the person is within its jurisdiction. *Massie* v. *Watts*, 6 Cranch, 148. And the terms in which he refers to the statement of Mr. Justice Nelson show that there was no intention to criticise or qualify that statement.

There are, indeed, decisions in the Circuit Courts that an assignee in insolvency, or a receiver, of all the property of a debtor, appointed under the laws of a State, does not, by virtue of the general assignment or appointment merely, without any conveyance made by the debtor or specifically ordered by the court, acquire a title in patent-rights. *Ashcroft* v. *Walworth*, 1 Holmes, 152; *Gordon* v. *Anthony*, 16 Blatchf. 234. But in *Ashcroft* v. *Walworth* Judge Shepley clearly intimated that the courts of the State might have compelled the debtor to execute such a conveyance. And the highest courts of New York and California have affirmed the power, upon a creditor's bill, to order the assignment and sale of a patent-right for the payment of the patentee's judgment debts. *Gillette* v. *Bate*, 86 N. Y. 87; *Pacific Bank* v. *Robinson*, 57 Cal. 520.

In *Carver* v. *Peck* (131 Mass. 291), the court reserved the expression of any opinion upon that question, because unnecessary to the decision. And the assumption in *Cooper* v. *Gunn, &c.* (4 B. Mon. (Ky.) 594), that an author could not be deprived, against his will, and in favor of any of his creditors, of any of the rights secured to him by the copyright acts, was merely *obiter dictum*, unsupported by reasoning or authority.

In the case at bar, the bill is filed by a judgment creditor of the patentee, in a court of the United States of appropriate jurisdiction, against the patentee, residing within the District and holding the entire legal title and two-thirds of the equitable interest in the patent-rights, and against the owner of an equitable interest in the remaining third, who is properly made a party to the bill. Both defendants are before the court and have filed answers. The debtor's interest in the patent-rights is property, assignable by him, and which cannot be taken on execution at law. The case is thus brought directly within the

opinion delivered by Mr. Justice Nelson in *Stephens* v. *Cady*, of the soundness of which we entertain no doubt.

The clause of the decree below, appointing a trustee to execute an assignment if the patentee should not himself execute one as directed by the decree, has not been objected to in argument, and was clearly within the chancery powers of the court as defined in the statute of Maryland of 1785, which is in force in the District of Columbia. Maryland Stat., 1785, c. 72, sects. 7, 13, 25; 2 Kilty's Laws; Laws of District of Columbia (ed. 1868), pp. 326, 328, 333, 336.

*Decree affirmed.*