EDISON ELECTRIC LIGHT CO. *v.* NEW HAVEN ELECTRIC CO., (two cases.)

*(Circuit Court, D. Connecticut.* June 11, 1888.)

CORPORATIONS—CONSOLIDATION—STATUS OF OLD CORPORATION—PATENTS FOR INVENTIONS—ASSIGNMENT.

Laws N. Y. 1884. c. 367, § 5, provides for the consolidation of existing corporations, and for the transfer of their property to the new company; section 6 provides that no claim against any corporation so consolidated shall be impaired. Rev. St. N. Y. pt. 1, c. 18, tit. 3, § 9, provides that the directors or managers of any dissolved corporation, at the time of its dissolution, shall be trustees of its creditors and stockholders, with full power to settle its affairs. Rev. St. U. S. § 4898, provides that every patent shall be assignable in law, by an instrument in writing. *Held,* that by the consolidation of two corpora-

tions the old corporations do not become extinct, so as not to be able to wind up their business, but that an assignment of the legal title of a patent in writing to the new corporation, by the president and secretary of one of the old corporations, after the consolidation, in pursuance of a vote of its executive committee passed prior thereto, is sufficient to convey said title.

In Equity. Bills to restrain alleged infringement of letters patent by the Edison Electric Light Company against the New Haven Electric Company, in two cases, numbered 570 and 571.

*John C. Tomlinson* and *Clarence A. Seward*, for plaintiff.

*Frederick P Fish* and *Samuel A. Duncan*, for defendant.

SHIPMAN, J. The bills in equity in these two cases are brought to restrain the alleged infringement of letters patent of the United States No. 274,290, granted to Thomas A. Edison, March 20, 1883, and No. 369,-280, granted to the plaintiff, August 30, 1887. The bill in No. 570, which was filed October 10, 1887, alleges the assignment of No. 274,290, on April 6, 1883, to the "Edison Electric Light Company," a New York corporation, and the subsequent formation of the plaintiff, called "Edison Electric Light Company," by the consolidation of said "The Edison Electric Light Company" and another New York corporation called the "Edison Company for Isolated Lighting," under and pursuant to chapter 367 of the Laws of the state of New York. It further avers that, by virtue of the consolidation, the title of the Edison Electric Light Company to No. 274,290 passed to the consolidated company, and that pursuant to a resolution of the executive committee of the said first-named company, passed on December 30, 1886, and before the consolidation, the company thereafter, and as of that date, executed and delivered an assignment of said patent to the plaintiff. The defendant has filed a plea which sets forth that, under the patent laws of the United States, the consolidation proceedings of themselves were wholly incompetent to transfer to or to vest in the complainant any title in or to the patent in suit. As to the assignment by an instrument in writing, it alleges, in substance, that the consolidation was consummated on December 31, 1886; that, by the act of consolidation, the corporate existence of each of the old companies was terminated; that the said deed of assignment was not executed or delivered until after the dissolution and termination of the life of the alleged assignor; and that no instrument in writing assigning and transferring the patent in suit to the complainant was executed and delivered during the corporate existence of the said the Edison Electric Light Company, or while it had any power or capacity to make such assignment; and that the complainant had not, at the date of the filing of the bill, any title on which it could bring suit. By stipulation the following facts are established for the purposes of the hearing on the plea: That on the 30th day of December, 1886, the company known as "The Edison Electric Light Company" was a corporation duly organized and existing under the laws of New York; that at that date the said company was the owner of the patent in suit; that the consolidation proceedings referred to in the bill of complaint took place, and that the

consolidation was effected, on December 31, 1886; that on the 30th day of December, 1886, the executive committee of the said "The Edison Electric Light Company" passed a resolution authorizing and directing the president and secretary of the company to "execute under seal of the company, and deliver to said new company, all assignments, patents, and transfers of contracts and rights of every kind;" that the said officers did not act on this resolution (at least as regards the patent in suit) until after December 31, 1886; that on January 18, 1887, a written assignment of said patent was drawn and was executed in the name of "The Edison Electric Light Company," by Edward H. Johnson, as president thereof, and the seal of the said old company was thereto affixed by F. S. Hastings, as secretary of the said company, who appended his signature, as secretary, to said assignment, the said Johnson and the said Hastings having been respectively the president and the secretary of the said company at the time of the consolidation and of said vote; and thereupon the document was delivered to the consolidated company. Sections 5 and 6, c. 367, Laws 1884, under which the two companies were consolidated, are as follows:

"Sec. 5. Upon the consolidation of the said corporations, and the organization of such new company, as hereinbefore prescribed, all and singular the rights, privileges, franchises, and interests of every kind belonging to, or enjoyed by the said several corporations so consolidated, and every species of property, real, personal, and mixed, and things in action thereunto belonging, mentioned in said agreement of consolidation, shall be deemed to be transferred to and vested in and may be enjoyed by such new corporation without any other deed or transfer; and such new corporation shall hold and enjoy the same, and all rights of property, privileges, franchises, and interests, in the same manner and to the same extent as if the said several companies so consolidated had continued to retain the title and transact the business of such corporations; and the title to real and personal estate, and rights and privileges acquired and enjoyed by either of the said corporations, shall not be deemed to revert or be impaired by such act of consolidation, or anything relating thereto.

"Sec. 6. The rights of creditors of any corporation that shall be so consolidated shall not in any manner be impaired by any act of consolidation, nor shall any liability or obligation for the payment of any money now due or hereafter to become due to any person or persons, or any claim or demand in any manner or for any cause existing against any such corporation or against any stockholder thereof, be in any manner released or impaired; but such new corporation is declared to succeed to such obligations and liabilities, and to be held liable to pay and discharge all such debts and liabilities of each of the corporations that shall be so consolidated, in the manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages; and the stockholders of the respective corporations so entering into such consolidation shall continue subject to all the liabilities, claims, and demands existing against them as such at or before such consolidation; and no suit, action, or proceeding then pending before any court or tribunal in which any corporation that may be so consolidated is a party, or in which any such stockholder is a party, shall be deemed to have abated or been discontinued by reason of any such consolidation; but the same may be prosecuted to final judgment in the same manner as if the said corporation had not entered into the said agreement of consolidation; or the said new corporation may be substituted as a party in the place of any corporation so consolidated

as aforesaid with any other corporation or corporations, and forming such new corporation, by order of the court in which such action, suit, or proceeding may be pending."

The Revised Statutes of the state of New York (part 1, § 9, tit. 3, c. 18) provide as follows:

"Sec. 9 Upon the dissolution of any corporation created or to be created, and unless other persons shall be appointed by the legislature, or by some court of competent authority, the directors or managers of the affairs of such corporation at the time of its dissolution, by whatever name they may be known in law, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the moneys and other property that shall remain after the payment of debts and necessary expenses."

Section 4898 of the Revised Statutes provides that "every patent or any interest therein shall be assignable in law, by an instrument in writing." The position of the defendant is that the consolidation proceedings did not and could not vest the legal title of the patent in suit in the plaintiff, but an instrument in writing, signed by a properly authorized person, was necessary to convey the legal title, (*Ager* v. *Murray*, 105 U. S. 126;) that no written conveyance was made until after the dissolution and death of the holder of the legal title, when the powers both of the corporation and its officers had ceased to exist; and that the legal title has therefore never been conveyed to the plaintiff. It must be assumed as true that the entire equitable title and interest in said patent vested in the plaintiff by virtue of the proceedings of consolidation, but that, no written conveyance or assignment having been executed on December 30, 1886, the bare legal title remained outstanding. It is further true that if, as the result of consolidation, the old corporation had wholly ceased to exist, it could not act thereafter as a corporation; and the written assignment did not confer the legal title upon the plaintiff. It is furthermore true that the question of the continuance of the company's life depends upon those statutes under which consolidation takes place, and which relate to the dissolution of corporations, but that where a new corporation is created to take the place of two old corporations, and has the grant of a new charter, the old corporations are at an end, except so far forth as corporate life is prolonged by special legislative enactment. *Bank* v. *Colby*, 21 Wall. 609; *Pomeroy* v. *Bank*, 1 Wall. 23; *Banking Co.* v. *Georgia*, 92 U. S. 665; *Railroad Co.* v. *Georgia*, 98 U. S. 359.

The question, then, is whether the intent of the various statutory provisions was that the old corporation should be entirely dissolved, so as to be without power to do anything necessary to close its business. The serious consequences which, according to the stringent rules and ideas of the common law, followed the dissolution of a corporation, are well known. "According to the old settled law of the land, where there is no special statute provision to the contrary, upon the civil death of a corporation all its real estate remaining unsold reverts back to the original grantor and his heirs. The debts due to and from the corporation are all extinguished. Neither the stockholders nor the directors or trustees of the

corporation can recover these debts, or be charged with them in their natural capacity. All the personal estate of the corporation rests in the people as succeeding to this right and prerogative of the crown, at common law." 2 Kent, Comm. 317. But the learned author proceeds, in a note, to say that "the rule of the common law has in fact become obsolete and odious. It has never been applied to insolvent or dissolved moneyed corporations in England. The sound doctrine now is, as shown by statutes and judicial decisions, that the capital and debts of banking and other moneyed corporations constitute a trust fund and pledge for the payment of creditors and stockholders; and a court of equity will lay hold of the fund, and see that it is duly applied." To the same effect are *Mumma* v. *Potomac Co.*, 8 Pet. 281; *Curran* v. *State*, 15 How. 304; *Bacon* v. *Robertson*, 18 How. 480. Acting upon these modern ideas, which are based upon the fact that "corporations like this, of a private nature, are in truth little more than private partnerships," (*Foss* v. *Harbottle*, 2 Hare, 491,) the legislature of New York provided that in cases of consolidation no claim for any cause existing should be impaired, and no pending suit in favor of or against the old corporation should be abated by reason of such consolidation. And furthermore provided, by a general statute, that the managers or directors of any dissolved corporation, at the time of its dissolution, if none others were appointed, should be the trustees of its creditors and stockholders, with full power to settle its affairs. The managers, who were to be, upon the dissolution, the trustees for the stockholders, appointed the president and secretary to transfer the patents and other property. If these persons had refused to assign this patent, a court of equity could have compelled them to do so, and their assignment in writing under such decree would have undoubtedly been a compliance with section 4898. *Ager* v. *Murray*, 105 U. S. 126. A voluntary act on their part would have been as effectual as an involuntary act by decree of a court of equity. But it is truly said that they did not assign as trustees, but as the agents of the corporation, thereunto authorized by the vote of the executive committee, and that the instrument purports to be the act of the corporation. It is furthermore said that, inasmuch as the president and secretary had not, before the death of the corporation, executed the power conferred upon them, and as this power was not coupled with an interest in the thing to be transferred, the power became extinct by the death of the corporation. If the analogies are complete and perfect between the condition of the old corporation after the consolidation and the death of a natural person, the position of the defendant is probably sound; but the defect in the argument, as it seems to me, is that the old corporation was not dead. It could do no new business, and almost all its powers had ceased, but it had vitality. In the language of Judge SHEPLEY, in *Re Insurance Co.*, 1 Holmes, 103, the dissolution was "a suspension of corporate action; not a cessation of corporate life." The statute had declared that all suits by or against it could be prosecuted to final judgment, and that no claim or demand against it was impaired. Being then a corporation which was not extinct, the power which was legally conferred before the consolidation, for the purpose of

winding up its business, could be executed, and the seal of the corporation could be used, after the consolidation.    It is true that the statute did not, in terms, as is often done, continue the existence of the corporation to do the acts which are necessary and incident to the winding up of its business, but it did; in terms, declare that the corporation was not extinguished with respect to any demands upon it.    The new corporation had a right to require a written assignment of the patents.    The old corporation, recognizing this right, charged its officers with the duty of making the title of the new company perfect, and the deed was executed for the purpose of satisfying this just demand, and performing this duty. It would be a narrow adherence to technicalities to say that it was invalid.

The facts in regard to patent No. 369,280 differ from those which have been recited in regard to patent No. 274,290, only in the following particulars:    Thomas A. Edison, as the inventor, made application for No. 369,280 on February 5, 1880, and, pending the application in the patent-office, assigned his interest in the invention and the patent to the Edison Electric Light Company.    On August 9, 1887, before the patent was granted, and after the consolidation, the president and secretary of said old company executed an assignment of said invention in the name of the old company to the new consolidated company.    The facts in the two cases have no difference in any vital particular.    The pleas are overruled.