JOHN C. WILSON vs. MARTIN-WILSON AUTOMATIC FIRE
ALARM COMPANY.

151   515
157   80
159   486
d180   ²544

Suffolk.   November 19, 1889. — June 17, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Equitable Attachment — Letters Patent — Foreign Corporation — Sale by
Master — Assignment in Writing.*

Under the St. of 1884, c. 285, § 1, a court of equity may order a conveyance of a
debtor's property, upon his refusal to convey it, by a master or other person
appointed for that purpose, whenever it is deemed necessary or proper in order
to apply it to the payment of a debt conformably to the statute.   FIELD &
W. ALLEN, JJ., dissenting.

Letters patent of the United States owned by a Maine corporation doing business
in this Commonwealth, whose president, treasurer, and directors resided or had
places of business here, were sought to be reached and applied in payment of a
debt of the corporation, by a bill in equity under the Pub. Sts. c. 151, § 2, cl. 11,
and the St. of 1884, c. 285, service of which was duly had upon the corpora-
tion.   Pending the bill these officers resigned, and residents of Maine were elected
to fill the vacancies, and the corporation withdrew from business in this Com-
monwealth.   *Held*, that a sale and conveyance of the letters patent by a master
might be ordered under the St. of 1884, c. 285, § 1, to satisfy the debt; and
that an assignment in writing of the patent by the master to the purchaser,
upon the refusal of the corporation to assign it, would be effective to convey
the title, and sufficient in form to satisfy the U. S. Rev. Sts. § 4898.   FIELD &
W. ALLEN, JJ., dissenting.

BILL IN EQUITY under the Pub. Sts. c. 151, § 2, cl. 11, and
the St. of 1884, c. 285, to reach and apply certain letters pat-
ent belonging to the defendant, a Maine corporation, in pay-
ment of a debt due from the defendant to the plaintiff.   After
the former decision, reported 149 Mass. 24, the case was again
heard in the Superior Court, upon agreed facts, in substance
as follows.

The defendant was indebted to the plaintiff in the sum of one
thousand dollars, with interest from August 15, 1888.   On that
date the president, treasurer, and all the members of the board of
directors of the defendant corporation, had places of business in
Boston ; but since that time all these officers have resigned, and
the vacancies have been filled by the election of residents of the
State of Maine.   The new officers have no pecuniary interest in

the defendant corporation, except as the holders of a few shares transferred to them without pecuniary consideration in order to qualify them to act as such officers.   The defendant corporation carried on business in Boston continuously from July 1, 1885, to late in September, 1888, since which time the defendant has not done any business in this Commonwealth, and has no property in the Commonwealth which can be attached or taken on execution in an action at law.   The Superior Court made a decree that in the event the defendant corporation refused or neglected to pay to the plaintiff the above sum, and interest and costs, within sixty days from the date of the decree, then one of the masters in chancery for the county of Suffolk should sell at public auction to the highest bidder, after proper notice and advertisement of the sale, the said letters patent, and that the defendant corporation should make and deliver, by its president and treasurer, under the direction of the master, a written assignment of the said letters patent to the purchaser at the sale; and in case the defendant corporation refused or neglected to make and deliver such assignment, then the master was ordered and directed " to make and deliver such assignment to said purchaser in the name and on behalf of the defendant corporation."   The defendant appealed to this court.

The case was argued at the bar in November, 1889, and afterwards was submitted on the briefs to all the judges, except *Morton*, C. J.

*G. Putnam & R. D. Weston-Smith*, for the defendant.

*F. T. Benner*, for the plaintiff.

KNOWLTON, J.   This case has previously been before us on the defendant's demurrer, and it was decided that the demurrer should be overruled, and that the service was sufficient to enable the court to render a personal judgment against the company which would be held good in any other jurisdiction as well as in this.   *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.* 149 Mass. 24.   A hearing has since been had, and the case now comes here on an appeal from the final decree.   The defendant concedes that all parts of the decree are well warranted by the law and the facts, except that part which provides that, if the defendant shall refuse or neglect to make and deliver a written assignment of the letters patent to the purchaser after

a sale at public auction by the master under the decree, the master shall " make and deliver such assignment to said purchaser in the name and on behalf of the defendant corporation."

Two objections are made to this part of the decree: first, that an order for a sale of property by a master, or other person appointed for that purpose, can be made by a court of equity only under the authority of a statute, and that there is no statute which authorizes it in this case; secondly, that a patent right is property of such a nature that the title cannot be passed by a sale or assignment made under an order of the court by any other person than the owner, even if it were in other respects within the jurisdiction of the court to make such an order.

It is undoubtedly true, that primarily jurisdiction in equity is *in personam,* and that as a general rule, when a transfer of property is necessary, the court cannot order a conveyance of it by a person other than the owner, except under the express or implied authority of a statute. The foundation of the jurisdiction to which the plaintiff appeals is the St. of 1851, c. 206, (Pub. Sts. c. 151, § 2, cl. 11,) which authorizes " a bill by any creditor to reach and apply, in payment of a debt due from any debtor not residing in this Commonwealth, any property, right, title, or interest, legal, or equitable, of such debtor, within this Commonwealth, which cannot be come at to be attached or taken on execution, in a suit at law against such debtor." This statute was passed long before the courts of this State were given general jurisdiction in equity, and it was early interpreted as creating rights unknown to the courts of chancery in England. It was held that a suit under it was not like an ordinary creditor's bill, but that any creditor might proceed without making other creditors parties, and without first obtaining judgment, and while he held security, and that it gave him a right of equitable attachment for the collection of his debt. *Crompton* v. *Anthony,* 13 Allen, 33, 37. *Barry* v. *Abbot,* 100 Mass. 396. *Tucker* v. *McDonald,* 105 Mass. 423. In some particulars the court construed it rather strictly, and held that a patent right owned by a resident here was not property within the State within the meaning of the statute, and that a creditor could not, under this process, reach and apply an equi-

table remainder of the debtor in a trust fund upon the future death of an equitable tenant for life, nor any other property when his claim was for less than one hundred dollars, and intimated that the statute would not apply except in cases where there was a third person in possession or control of the property of the debtor, or in some way under obligation to him. *Bartholomew* v. *Weld*, 127 Mass. 210. *Phœnix Ins. Co.* v. *Abbott*, 127 Mass. 558. *Chapman* v. *Banker & Tradesman Publishing Co.* 128 Mass. 478. *Carver* v. *Peck*, 131 Mass. 291. *Russell* v. *Milton*, 133 Mass. 180. Thereupon the St. of 1884, c. 285, was passed, with a view to enlarge the jurisdiction of the court. Section 1 of this chapter is as follows : " A bill in equity may be maintained to reach and apply in payment of a debt any property of a debtor, as provided by clause eleven of section two of chapter one hundred and fifty-one of the Public Statutes, notwithstanding the fact that the plaintiff's debt does not equal one hundred dollars in amount, or that the property sought to be reached and applied is in the hands, possession, or control of the debtor, independently of any other person, or that it is not within the State, or that it is of uncertain value, provided the value can be ascertained by a sale or appraisal, or by any means within the ordinary procedure of the court, or that it cannot be reached and applied until a future time." Section 2 relates to suits to reach and apply the interest of a copartner in the partnership property.

The provisions of this act indicate an intention on the part of the Legislature to give the court power effectually to reach and apply every kind of property which cannot be attached or taken on execution. It changes the statute from a mere authority to make an equitable attachment of property in the hands of an equitable trustee, and authorizes proceedings in which there is no other defendant but the debtor, and plainly implies that the court may make all such orders and take such measures as may be necessary to apply the property to the payment of the debt. There can be no doubt that under it a court may proceed against an absent defendant so far as to appropriate his equitable interest in property in this State, which cannot be attached or taken on execution, to the payment of his debt. The only way in which that could be done in his absence might be by appointing

some person to sell and convey such interest. The act does not purport to point out the modes of procedure, but it authorizes the courts to do certain things which they could not do under their general jurisdiction, and impliedly authorizes them to take any measures analogous to ordinary proceedings of courts of equity which may be necessary or proper to accomplish the work which they are set to do. We can imagine many cases in which, without authority to order a sale by a master or other person, a court would fail utterly to reach and apply the property which the statute intended it should apply in favor of the creditor. Indeed, the present case seems to be such an one. For it appears that when this bill was brought the president and treasurer and all the directors of the defendant corporation resided or had their places of business in Boston in this Commonwealth, and that all these officers have since resigned their offices, and others have been elected in their places who are all residents of the State of Maine.

One clause of the statute distinctly refers to a sale of property, as a means of ascertaining its value, under an order of the court, in certain cases. It has never been decided that a sale by a master might not be ordered under the Pub. Sts. c. 151, § 2, cl. 11, and some of the reports indicate that it has been done. *Davis* v. *Werden*, 13 Gray, 305. However that may be, we are of opinion that under the later statute there is authority to make a sale in that way, whenever it may be necessary for the purpose of applying property conformably to the statute. This view is in accordance with our decision in *McCann* v. *Randall*, 147 Mass. 81.

The next question before us is, whether a patent right so differs from other property that it cannot be sold in this way. This question relates merely to the form of transfer; for it is well settled that a court of equity has power to take it and appropriate it to the payment of the owner's debt. *Gillett* v. *Bate*, 86 N. Y. 87. *Ager* v. *Murray*, 105 U. S. 126. *Pacific Bank* v. *Robinson*, 57 Cal. 520. *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.* 149 Mass. 24. Under the Revised Statutes of the United States, § 4884, every patent shall contain " a grant to the patentee, his heirs or assigns." Section 4898 provides that " every patent or any interest therein shall be assignable in law by an instrument

in writing." An assignment in bankruptcy transfers patent rights. U. S. Rev. Sts. § 5046. There is no good reason for holding that this statute should be construed so strictly as to require an assignment to be made by the patentee's own hand. It is better to hold that an assignment made for him and in his name by any one acting under legal authority is good. Notwithstanding the decisions in *Ashcroft* v. *Walworth*, Holmes, C. C. 152, and *Gordon* v. *Anthony*, 16 Blatchf. 234, we understand this to be the effect of the judgment of the Supreme Court of the United States in *Ager* v. *Murray, ubi supra.* We are therefore of opinion that the assignment contemplated by this decree will be good in form under the statutes of the United States.

It is said that the assignment will be void because a patent is property outside of this Commonwealth, which cannot be affected by a judicial sale here. It ·is true that a judgment or a decree of a court cannot *ex proprio vigore* affect property in another jurisdiction. Titles to real estate can be changed only under, and in accordance with, the laws of the country where the land is situated; and a decree of a foreign court in regard to personal property can be given no effect against the rights or interests of citizens of the State where the property is situated, nor any effect at all except through comity. Is a patent right property of such a kind, and has it such a *situs* in any particular State, that the courts of one State can disregard a decree determining the ownership of it made by a court of another State having jurisdiction of the owner of it, and a right to apply it to the payment of his debt? *Carver* v. *Peck*, 131 Mass. 291, and *Stevens* v. *Gladding*, 17 How. 447, 451, indicate that it is not. It seems to us that the rule to which we have referred relates to visible, tangible property, which a State may say is to be governed by its laws because it has an actual, visible existence there and not elsewhere,— perhaps also to property which cannot be made available except by proceedings under its laws. A patent right is not like a material substance. So far as it has location at all, it is within every part of the United States. But it has no such location anywhere that a particular State can say, This property is within my jurisdiction; I will not allow any other State to deal with it, but I will control it by my own laws for the benefit of my own people. The reason why ordinary choses in

action are usually said to be governed by the law of the place of their owner's domicil, is not that they have a local *situs* in themselves, but that they follow the person of their owner, and that place is commonly the only one whose courts have jurisdiction over him.

In the case at bar, the defendant was subject to the jurisdiction of the court, as much as if it had been a Massachusetts corporation. The right of the court to determine the equitable ownership of the patent, as between the defendant and the plaintiff, is unquestioned. The jurisdiction which settles that is strictly *in personam.* The decree requires the defendant to assign the patent, which is an incorporeal right to be exercised in Massachusetts and elsewhere, and which the corporation carried with it when it went into court on the summons of the plaintiff, and which has no local existence except as it accompanies its owner. The subject matter of the suit was the question as to the ownership of the patent, and as to the duty of the defendant to turn it over to the plaintiff. The decree of the court finding such ownership against a defendant within its jurisdiction, and determining that the property should be transferred for the benefit of the plaintiff, showed jurisdiction in the court to convey the legal title to this peculiar property, which it would not have had to convey an ordinary chattel situated in another State. If, in a case of this kind, a debtor should refuse to convey the property in accordance with its decree, the court could imprison him. A sale by a master, under the order of the court, is also authorized by our statute. The law which has power over a debtor's person has power to determine how, and on what conditions, a right of his shall be divested, unless the right has relation to tangible property within the jurisdiction of another State, which may intervene to control it. It is on this ground, but under a different statute, that sales are made on executions. Such sales are not founded on proceedings *in rem,* which determine the title to the *res* against all the world. But when a court has jurisdiction of a debtor, and finds that he owes the debt, the statute authorizes the issuing of an execution under which his rights in property, whatever they are, may be sold for the benefit of his creditors. The sale is incidental to the determination of his liability.

We are of opinion that other States have no such jurisdiction over the defendant's patent as to affect the validity of a decree which confessedly is good, so far as it directs a sale to be made by him, and which would be unquestioned if it related to property wholly within this Commonwealth. This question, too, or one much like it, is involved, although but little discussed, in the judgment in *Ager* v. *Murray*, *ubi supra*.

*Decree affirmed.*

W. ALLEN, J.   Mr. Justice FIELD and myself are unable to concur in the decision of the court which affirms that clause of the decree which orders an assignment of the patent to be made by a master. The decree assumes that the court has authority to transfer the title to the patent by decree; for it is immaterial whether the decree directly transfers the title, or authorizes a master to do so by a written assignment. The suit is not brought by an owner of property to establish his title to it, and obtain possession of it; but it rests upon the ground that the defendant is the owner, and seeks to effect a change of title.

The ordinary jurisdiction of a court of chancery is *in personam*, and not *in rem*; and it is not in accordance with the ordinary procedure of the court to act directly upon property, and to transfer the title to it. Whatever authority the court may have to order the payment over or the sale and delivery of property which passes by delivery and is under the control of the court, in the manual possession of its sequestrators or receivers or master so that delivery can be made of it, it cannot transfer or assign a chose in action or an incorporeal right, or change the title to any property by decree, without special statute authority. This was fully discussed in the dissenting opinion in *McCann* v. *Randall*, 147 Mass. 81, and is assumed in the opinion of the court in this case; and the authority for the decree is rested on the provision of the St. of 1884, c. 285, § 1, in connection with the earlier statutes of which that was an amendment. The only question I shall consider is whether that statute authorized the decree. The question was not decided in *McCann* v. *Randall*, *ubi supra*; and that case did not decide that the draft, which was the property sought to be reached,

could be assigned by the court.   The defendant Manning, in whose possession and control the draft was within this State, sent it, in disobedience of the injunction of the court, to the principal defendant, the debtor without the State, in order that he might indorse and collect it, which he did, paying to Manning the amount of a lien he had upon it.   The defendant Manning was ordered to pay the amount of the draft, less the amount of his lien upon it.

In considering whether the St. of 1884, c. 285, § 1, authorized the court to assign a chose in action, it is important to look at the history of the statute.   In 1851 the Supreme Judicial Court was, as now, a court of equity, and as such had jurisdiction of the redemption and foreclosure of mortgages ; of trusts ; of the specific performance of contracts ; of the delivery of goods secreted, etc. ; of contribution ; of cases where more than two parties were liable ; of copartnerships, joint tenancies, etc. ; of waste and nuisance ; of discovery ; and of account (Rev. Sts. c. 81, § 8 ; c. 118, § 43) ; and also of twelve other particular matters, which are stated in the Index to the Revised Statutes under the title " Bill in Equity."   All this jurisdiction it had had for fifteen years, and it also had during all that time an established procedure under " Rules for the Regulation of Practice in Chancery," the last of which adopted as the outlines of its practice the practice of the High Court of Chancery in England so far as not repugnant to the Constitution and laws of the Commonwealth and the rules of the court.   24 Pick. 410.   The jurisdiction was enlarged by the St. of 1855, c. 194, to include frauds and conveyances of real estate in the nature of mortgages, and by the St. of 1856, c. 38, to include accident and mistake, and by the St. of 1857, c. 214, " full equity jurisdiction, according to the usage and practice of courts of chancery," was given to the court.   These statutes enlarging the equity jurisdiction of the court did not change the procedure in equity.   In 1851 this court was as distinctively a court of equity, having an established procedure, as it is to-day.

Jurisdiction in equity was given in order that these subjects should be brought under the distinctive procedure and process of courts of equity, and to secure the relief which such procedure and process afforded.   It was for precisely this purpose that

the statute giving jurisdiction in equity to reach and apply property of debtors was first enacted, in 1851. The creditor's bill was unknown to our jurisprudence. There was but little occasion for it. The distribution of the estates of deceased persons and of insolvent persons was otherwise provided for. The law provided for taking and selling on execution all the property of a debtor which could be taken on mesne process, and which it was intended should be liable for his debts; and by the trustee process goods, effects, or credits in the hands of third persons might be reached by proceedings against such persons. In regard to property which could not be taken on execution or attached on trustee process, and which belonged to debtors living in this State, the law furnished substantially the same means as were furnished by a creditor's bill to reach such property, namely, the punishment of the debtor by imprisonment if he did not surrender the property. Rev. Sts. cc. 90, 98. There were no means of reaching such property in this Commonwealth which belonged to debtors who were not residents, and could not be served with process here. It was to meet this particular mischief in the old law, which gave to foreign debtors owning equitable property here an advantage over domestic debtors owning such property, that the St. of 1851, c. 206, was passed. *Davis* v. *Werden*, 13 Gray, 305.

The language of that statute is: " The Supreme Judicial Court shall have jurisdiction in equity, upon a bill by any creditor to reach and apply, in payment of a debt due from any debtor not residing in this Commonwealth, any property, right, title, or interest, legal, or equitable, of such debtor, within this Commonwealth, which cannot be come at to be attached or taken on execution, in a suit at law against such debtor." The property of a non-resident described by the statute as within this State would naturally, if not necessarily, be in the possession or legal ownership of a resident here; and the intent of the statute in giving jurisdiction in equity was that the property might be reached through such person by proceedings *in personam* against him. As originally passed, the statute is plainly, what it has been again and again called by this court, an equitable trustee process, and intended only equitable proceedings; and it is impossible to find in it any intention to

change the ordinary procedure of the court. It is not contended, and cannot be contended, that this statute gave the court authority to assign a patent. The St. of 1858, c. 34, amended the St. of 1851, c. 206, by striking out the words "not residing in this Commonwealth," thus making the act apply to resident and non-resident debtors alike; and, as amended, the statute was re-enacted in the Gen. Sts. c. 113, § 2, cl. 11, and in the Pub. Sts. c. 151, § 2, cl. 11, and remained unchanged until the St. of 1884, c. 285.

The question is whether that statute changed the procedure of the court of equity as regards its subject matter, and authorized the court to assign a chose in action or incorporeal right. The amendment made by the St. of 1858, c. 34, which was after the enactment of the statute giving the court full equity jurisdiction, suggests two important changes in the statute as originally enacted, and as construed by the court. The facts that in the original act the principal defendant, the debtor, could not be a resident of this Commonwealth, and need not be and presumably would not be served with process, and that the property which by the act was to be reached by proceedings in equity must be within the Commonwealth, and by its nature and situation such that it could not be come at to be attached or taken on execution, naturally led to the construction that there must be some third person within the jurisdiction of the court holding such relation to the property that it could be reached by a personal decree against him. When, by the amendment of 1858, (St. 1858, c. 34,) a debtor residing in the State was made amenable to the suit, the chief ground for that construction was taken away. He must be served with process, and be actually or constructively in court. If it appeared that he held in his own possession or control property not exempt from execution, but which could not be come at to be taken on process, it could be reached by the ordinary procedure of a court of equity requiring him to transfer it, and this whether the property were within or without this Commonwealth, and it would be carrying out the general intent of the statute to authorize the court to enter such a decree. Notwithstanding this statute, the court seemed to hold to the equitable trustee process construction of the act. *Phœnix Ins. Co.* v.

*Abbott*, 127 Mass. 558. And of course the court could not extend the acts, limited in terms to property within the State, to apply to property without the State.

When the statute was made applicable to residents of the State, it became in accordance with the principles and procedure of courts of equity that it should be extended to property in the hands of the debtor, and to property without the State, because he could be compelled to assign it, and it was thus within the reach of a court of equity. This is what was done by the St. of 1884, c. 285, § 1. It provided that a bill might be maintained under the Pub. Sts. c. 151, § 2, cl. 11, notwithstanding the fact that the property sought to be reached was in the hands, possession, or control of the debtor independently of any other person, or that it was not within the State. The Legislature, by extending the scope of the statute, after it had been made to apply to debtors within the State, to property in the possession of the debtor, and to property without the jurisdiction of the court, gave a jurisdiction to which a decree *in personam* is especially appropriate, and a decree *in rem* especially inappropriate. The other provisions of the section do not seem material to the question under consideration. It will not be contended that the provision that a bill can be maintained although the property is of uncertain value, " provided the value can be ascertained by a sale or appraisal, or by any means within the ordinary procedure of the court," authorizes an assignment by the court of a chose in action contrary to the ordinary procedure of the court. It seems to me that the statute evidently contemplated equitable remedies by decrees *in personam*.

If the statute is to be construed as authorizing a judicial assignment of the title of property which does not pass by delivery, it would not justify the decree, because the property in question is not within the Commonwealth, and the decree affects to transfer the title to property outside the jurisdiction of the Legislature and of the courts of this State; and the statute will not be construed to imply such authority.

No question is made of the authority of the court to compel the owner of a patent to assign it to a receiver, or a master appointed to receive it, or to a purchaser under the order of the

court. The objection is that the court cannot itself, by decree, transfer the title, for the reason that the patent is not within its jurisdiction. If a patent, according to the general rule of personal property, followed the domicil of its owner, the patent in question would be in the State of Maine; for the owner is a corporation organized under the laws of that State, and, though it may by its agent do business, and sue and be sued, in other States, it cannot change its domicil, nor even pass personally out of the State of its creation. *Bank of Augusta* v. *Earle*, 13 Pet. 519. *Lafayette Ins. Co.* v. *French*, 18 How. 404. If the patent has no locality except the whole country, no State has jurisdiction over it as being property within its limits, and it can only be reached through the personal act of its owner. A State might indeed, by statute, order it to be sold on execution or under a decree in chancery, and declare the title to be in the purchaser; but such sale would have no more effect outside the limits of the State than the sale of land in another State would have.

In *Stevens* v. *Gladding*, 17 How. 447, 451, Mr. Justice Curtis said in reference to patents and copyrights: "Not to repeat what is said . . . in [*Stephens* v. *Cady*] 14 How. 531, it may be added, that these incorporeal rights do not exist in any particular State or district; they are coextensive with the United States. There is nothing in any act of Congress, or in the nature of the rights themselves, to give them locality anywhere, so as to subject them to the process of courts having jurisdiction limited by the lines of States and districts. That an execution out of the Court of Common Pleas for the county of Bristol, in the State of Massachusetts, can be levied on an incorporeal right subsisting in Rhode Island, or New York, will hardly be pretended. That by the levy of such an execution the entire right could be divided, and so much of it as might be exercised within the county of Bristol sold, would be a position subject to much difficulty." Mr. Justice Gray says, in *Ager* v. *Murray*, 105 U. S. 126, 130, after quoting the above language: "The difficulties of which the learned justice here speaks are of seizing and selling a patent or copyright upon an execution at law, which is ordinarily levied only upon property, or the rents and profits of property, that has itself a visible and tangible

existence within the jurisdiction of the court and the precinct of the officer; and do not attend decrees of a court of equity, which are *in personam*, and may be enforced in all cases where the person is within its jurisdiction."

It is obvious that it can make no difference as respects the jurisdiction of a State whether it orders an assignment on an execution at law or on a·decree in equity. The dominion over the property, and the assumption of jurisdiction over it, is the same in both instances. If it cannot sell and assign it upon process at law, it cannot upon process in equity. In *Carver* v. *Peck*, 131 Mass. 291, it was held that a patent owned by a resident of this Commonwealth was not property within the State, and could not be reached, and the statute of 1884, extending the jurisdiction to property without the State, was passed. Under that statute, jurisdiction is given in this case to compel the defendant to assign the patent. See *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.* 149 Mass. 24. But the court cannot assume jurisdiction judicially to assign it without overruling the opinion in *Carver* v. *Peck*, and holding that a patent is property within the State. If there was not jurisdiction over the property before the amendment, for the reason that the property was not within the State, there can be no jurisdiction over the property as within the State after the amendment. If a patent has location in every part of the United States, so that no one State has jurisdiction over it, by reason of its locality, to the exclusion of other States, and every State has equal jurisdiction over it and an equal right to appropriate it to the benefit of its own citizens with every other State, it follows that no State has jurisdiction over the patent itself, and no State can reach it except through the person of the owner, or some one duly authorized by him to assign it. Otherwise, there must be legally possible as many different lawful assignors besides the owner as there are States and Territories or judicial districts in the United States. The rights of the States by reason of the locality of the patent are equal, and, if any one State has jurisdiction to appropriate it because within its limits, every other State must have the same jurisdiction; and as that is impossible, it follows that no State can have the jurisdiction. The fact that the property is incorporeal and

intangible, and has no visible existence, makes it possible to conceive of it as existing in the whole country, and in every State; but we cannot conceive of the whole patent in its entirety as having its locality in the whole country and in the several States at the same time. The fact that the property is immaterial, and has no actual visible location, certainly cannot aid the jurisdiction over it, which is dependent upon its locality. The State cannot have jurisdiction over it except so far as it is within the State; and, so far as the patent is within other States, it is not within this State.

Again, the statute will not be construed to give authority to the court to assign patent rights, and the court will not decree an assignment of them, because the title would not pass by such an assignment. A patent right is assignable only because expressly made so by the statute which created it, and in the manner prescribed by the statute. The assignment must be by an instrument in writing, by the patentee, or his assigns or legal representatives; and it will be void as against subsequent purchasers without notice, unless recorded in the Patent Office within three months from its date. U. S. Rev. Sts. § 4898. The natural construction of this is, that a patent cannot be assigned, and that no State law can make it assignable in any other way than the one prescribed.

In *Stephens* v. *Cady*, 14 How. 528, speaking of copyrights Mr. Justice Nelson said: " No doubt the property may be reached by a creditor's bill, and be applied to the payment of the debts of the author, the same as stock of the debtor is reached and applied . . . for the benefit of the creditors. . . . But in case of such remedy, we suppose, it would be necessary for the court to compel a transfer to the purchaser, in conformity with the requirements of the copyright act, in order to invest him with a complete title to the property." In *Ashcroft* v. *Walworth*, Holmes, C. C. 152, it was decided that the statute " clearly contemplates a written instrument, signed by the owner of the patent"; and that a court of insolvency of Massachusetts, to vest the title to a patent in the assignee, must compel a transfer in conformity with the requirements of the patent act. In *Gordon* v. *Anthony*, 16 Blatchf. 234, the same construction of the statute was adopted; and it was held that

a State court could not vest the title to a patent in a receiver except by compelling an assignment by the patentee. In *Pacific Bank* v. *Robinson*, 57 Cal. 520, the court said of a patent: " As a creation of legislation, it is transferable only according to the provisions of the statute which created it, and the only question is, Has a court of equity power to compel its assignment and sale for the benefit of judgment creditors?" The decree required the defendant to transfer by a proper instrument. I see no reason for supposing that the Patent Office, or any United States court, or any State court outside of the State whose court made the decree, would recognize a transfer of a patent by decree of a State court.

*Ager* v. *Murray*, 105 U. S. 126, is the only case where an assignment of a patent was ordered to be made by a trustee; and that case decided nothing as to the form of the decree. That was a bill brought in the courts of the District of Columbia against residents of the District. The prayer of the bill was, that the patent be sold, and the defendant be required to execute an assignment to the purchaser in conformity with the patent laws. The decree was, that, in default of payment of the amount found due, the patent right be sold, and an assignment executed as prayed for, and that, in default of the defendant's executing such assignment, some suitable person be appointed a trustee to execute the same. This was the form of decree authorized by the statute of Maryland of 1785, c. 72, which was in force in the District of Columbia. The defendants appealed from the decree. The court say: " The single question argued before us is whether a patent right may be ordered by a court of equity to be sold and the proceeds applied to the payment of a judgment debt of the patentee." It was decided that it could be sold, but the manner in which it was understood by the court that it could be transferred appears in the extract before given from the opinion, and from the reference to the case of *Stephens* v. *Cady*. The court, after reciting the facts, say: " The case is thus brought directly within the opinion delivered by Mr. Justice Nelson in *Stephens* v. *Cady*, of the soundness of which we entertain no doubt. The clause of the decree below, appointing a trustee to execute an assignment if the patentee should not himself execute one, . . . has not been objected to

in argument, and was clearly within the chancery powers of the court as defined in the statute of Maryland." The decree of the court below was affirmed. I do not regard the case as deciding that there could be a valid assignment of a patent by a decree of a State court where the defendant is a resident of the State, and its statutes expressly authorize such a decree; much less when the defendant is a non-resident, and there is no such statute of the State.

There can be no doubt that an assignment by the defendant *pendente lite* would be recognized everywhere, unless in our own courts. If the defendant should assign, by an instrument duly recorded, to a *bona fide* purchaser for value in Maine, and the question of the title to the patent should come before our courts between him and a subsequent purchaser and assignee under the decree of the court, I do not see why our courts would not have to declare the title they made to be invalid. The court has no control over the property, and no lien or hold upon it. It is not, and never has been, in the possession of the court; for the appearance in the suit of a foreign corporation by its attorney or agent does not bring its property into court. All that the court can do is to restrain the defendant from assigning; but if it should assign, in contempt of the restraint, to a *bona fide* purchaser, I understand that the assignment would be good. The court has not obtained possession of the property, nor of the letters patent, the evidence and symbol of it; and, if it attempts to assign the property, it must do so without the possession of it, actual or constructive, and without the means of knowing, except so far as the records in the Patent Office may show, whether it then belongs to the defendant. It can make no delivery of the property, or of any symbol of it. All that it can do is to give to the purchaser an instrument, in form an assignment from a person not the owner, and send him to the Patent Office to have his assignment recorded. But if it is entitled to record, so would be the forty like assignments from other States which might be presented. If record were refused, would any court compel the recording of such assignments? And if they should all be recorded, how would it be determined which was the one valid assignment? And if that were found, would it hold good against a prior or a subsequent assignment

from the owner duly recorded, or even if not recorded? The answer is, that no assignment is valid except by an instrument in writing signed by the owner as required by the statute.

For the reasons that the clause of the decree, which orders the master to make an assignment in behalf of the defendant, is not warranted by the ordinary procedure of courts of equity, and is not authorized by the statute, because the statute does not authorize such an assignment of a chose in action, nor of property without the Commonwealth, nor of a patent right, I think that the decree should be modified by striking out that clause. Whether the decree should be further modified by ordering an assignment to a master before the sale, has not been considered.