[Civ. No. 13270. First Dist., Div. One. Jan. 8, 1947.]

ANDREW D. ZANETTI, Respondent, v. JOSEPH ZANETTI, Appellant.

554

Henry Gifford Hardy for Appellant.

Joseph A. Garry for Respondent.

SCHOTTKY, J. pro tem.—Respondent commenced an action against appellant alleging an oral partnership between the parties in the printing and basket making business and grounds for the dissolution of the partnership. The complaint set forth that certain property, including certain patents, belonged to the partnership and prayed for the dissolution of the partnership, an accounting and the appointment of a receiver. Appellant filed an answer and also filed a cross-complaint in which he likewise sought the dissolution of the partnership and the appointment of a receiver. Appellant set forth in his answer and cross-complaint that certain patents in connection with basket making machinery were his separate property and not the property of the partnership. A receiver was appointed pendente lite.

Upon the trial the nature and extent of the partnership assets, with the exception of the patents, were settled by a stipulation of the parties, approved by the court, and filed in the action. The entire trial was upon the issue as to whether the partnership assets included "United States letters patent for vacuum paper feeders, No. 1825765, granted October 6, 1931 to Joseph Zanetti" and "United States letters patent for

machines for making paper boxes, granted to Joseph Zanetti, July 3, 1934 and numbered 1965274.'' These patents were claimed by appellant as his separate property. Upon this issue the court found against appellant's averments that he was the owner of the patents and expressly found that the assets of the partnership included the two patents hereinbefore described. This appeal is from the judgment entered in accordance with said findings and decreeing that all assets of the partnership be sold by the receiver and the net proceeds be divided between the partners equally.

Appellant contends that the finding that the two patents were partnership assets lacks evidentiary support, and that the judgment should be modified to provide that said patents are the individual personal property of appellant.

The following oral summary of evidence by the trial court is amply supported by the record: ''I am prepared to find, if there is any question about it, that the partnership was orally created away back in 1920, not in 1923, but 1920, between these parties, which has continued up to the present time. . . . We are dealing with two brothers, and I do not have to repeat, two congenial brothers who, by their mutual efforts and endeavors have built up a successful business out there in what I think we call the Bay View Section of San Francisco. Now, one of them perfected himself in the craft of being a machinist. The other became a printer, and I daresay from his description of the kind of work he has been doing, a very good one, and in addition to being a printer, the record this morning shows that for three years he discarded his printing vocation and, along with his brother who is a machinist and I imagine a very good one, although he never received a college education, but he gained his knowledge of his craft in a better school, the school of experience,—for three years Andrew the printer discarded his printing vocation and worked with his brother in the machine shop which they conducted as a partnership enterprise. In 1923 they enlarged, for the mutual benefit, in order to increase their income, they introduced into the same building, into the same plant where they had previously conducted a machine shop alone, the printing establishment. Naturally by reason of the skill or knowledge of each one of them in their particular lines, Andrew conducted the printing establishment while his brother conducted the machine end of the business. They went on from 1923 until the present time,

that is a matter of twenty-two years, successfully and profitably. During the course of their satisfactory and profitable career as partners, they developed various patents which have been introduced in evidence here. By patents I mean the letters patent emanating from the Patent Office of the Department of Commerce. Some of those patents, or at least one of them, related to betterment of the printing establishment, improvements in the method of conducting the printing shop. Others related to improvements in turning out berry baskets, which seems to have developed in these later war years into the more profitable end of the business. I have no information, and it does not concern us, whether or not in the previous years the printing end of the business produced less or more profit than the machine end of the business, because during those years even up to the present time, these two brothers, under a favorable understanding which you would expect in a case of this kind, have shared the expenses and divided the profits of the business or businesses conducted in the same building, in the same establishment, by both of them. One of the patents was taken, although Andrew claims that he, through his skill developed the patent, was taken in the name of both of them. The more important patent which is the subject of the present controversy was taken out in the sole name, in the individual name of Joe. Now, by reason of the close and friendly fraternal relationship that existed between these parties for so many years, by reason of the fact that they pooled all their knowledge as to their respective trades and crafts, by reason of the fact that during all these years they have conducted both businesses, the printing business as well as the machine-shop business in the same premises, by reason of the fact that during this great length of time, they have been in fact partners in every sense of the word, regardless of the absence of a formal written agreement between them, and during that entire time they have shared their expenses as partners and profits as well, which in and of itself indicates the existence of a partnership, I am prepared to make a finding in consonance with all the evidence and the implications derived therefrom, the inferences following from the evidence, that this particular patent, the subject of controversy here, belongs to the partnership, that both of the parties have an equal interest in this particular patent, regardless of the fact that it was taken out in the name of Joe as an individual and not in the partnership name.

That is my judgment and will be my judgment incorporated in proper findings, as to the ownership of the patent."

It is not disputed by appellant that all of the expenses in connection with the development and obtaining of the patents in controversy were paid out of the common partnership account; that three of the suction feeder machines were made under the patent, one being used in the partnership business and two being sold for $1,000 each and the proceeds divided equally between the partners; and that appellant had neither claimed nor expected compensation from the partnership for the use of the patent. Appellant contends that he alone designed, made and invented the said patented machines, but there is ample evidence to support the implied finding of the court that respondent contributed ideas and suggested changes and improvements which were incorporated in the inventions. In fact the most reasonable inference to be drawn from the evidence is that while appellant did construct the model of the machines in the machine end of the business, which he had charge of, respondent also had a substantial part in perfecting and completing it.

Appellant argues that under the United States patent law the patents in controversy would have been invalid if respondent were in fact the coinventor and he quotes the following language from the case of *Wailes Dove-Hermiston Corp.* v. *Oklahoma Contracting Co.*, 48 F.2d 901, at page 902: "A patent is invalid when not granted to the original and first inventor, and, if two invent, the sworn application by one of such two will not satisfy the statute. To allow one of two inventors to attempt to satisfy the precise statutory requisite would be to set aside such requisite, and to allow one, who in truth was not the inventor, to reap the monopoly afforded. [citing cases.]"

Appellant argues further that by finding and decreeing that the said patents were partnership assets the court impliedly found that respondent was not a joint inventor of the machines covered by the said patents. Appellant points out that the trial court made no finding that appellant had assigned or agreed to assign any interest in the said patents to respondent and that there is no evidence of any such assignment or of any agreement, written or oral, concerning these two patents. Appellant then asserts the mere partnership relation between appellant and respondent would not create any presumption that respondent acquired an interest

in the patents, legal or equitable, and in support of this contention appellant quotes from *Burr* v. *De La Vergne*, 102 N.Y. 415 [7 N.E. 366, at page 367]: "The proposition asserted in behalf of the defendant, that one partner acquires no right or interest, legal or equitable, in an invention made by his copartner during the existence of the partnership, by reason merely of the copartnership relation, although the invention relates to an improvement in the machinery to facilitate the business carried on by the firm, and although the partner making the invention uses copartnership means in his experiments, and is also bound, by the copartnership articles, to devote his whole time and attention to the firm business, is a doctrine supported by authority and consonant with reason." Appellant then concludes his argument upon this phase of the case by stating that as sole inventor appellant has always had and still has the sole title to said patents, that these patents are his individual property, and that contrary to law and the facts, the judgment takes appellant's individual property and orders it sold as partnership property.

Appellant's argument is ingenious but far from convincing. The mere fact that the said patents were applied for and issued in the name of appellant would not prevent them from being partnership property under the evidence in this case. There is no legal impediment to the owning by a partnership of a patent issued in the name of an individual partner.

In 40 American Jurisprudence, page 203, section 108, it is stated: ". . . a partnership may own a patent right, since it is incorporeal personal property, and it makes no difference in whose name letters patent may be taken out."

And in 35 United States Code Annotated section 47, it is stated in note 11: "Patent rights may be held in partnership, the mutual rights and liabilities of the parties being determined by their agreement and by the general partnership law." [Citing a long list of cases.]

In the early case of *Davis Imp. Wrought Iron W. W. Co.* v. *Davis Wrought Iron W. Co.*, 20 F. 699, it was held that the legal title to a patent may be in one person and the equitable title in another.

In *Somerby* v. *Buntin*, 118 Mass. 279 [19 Am.Rep. 459], in which case the patent was obtained in the name of one partner, the court said: "The patent, when obtained, was therefore not the result of the efforts, the service or the money

of one partner, but of the joint contribution of all, and was in equity partnership property, in whosoever name letters patent were taken out.''

In *Hill* v. *Miller,* 78 Cal. 149 [20 P. 304], it is said: ''The patent was obtained for the hay-press while the copartnership was in existence, and while the plaintiff and defendant, as copartners, were manufacturing the hay-presses. We think the court properly held that the patent so issued under an agreement that the hay-press should go into the partnership as part of its stock belonged to the partnership.

''It is a matter of no consequence that there was no written assignment of a half interest in the patent by defendant to plaintiff. The plaintiff as a partner, became in equity the owner of one half of the patent, though the agreement was by parol.''

Section 2402 of our Civil Code provides: '' (1) All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property. (2) Unless the contrary intention appears, property acquired with partnership funds is partnership property.''

In 40 American Jurisprudence section 89, page 191, it is stated: ''. . . the chief criterion for determining whether certain property is or is not that of the firm is the intent of the partners to devote it to partnership purposes. . . . Under the provisions of the Uniform Partnership Act, all property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property, and unless the contrary intention appears, property acquired with partnership funds is partnership property.''

In view of the foregoing authorities and of the facts and circumstances of this case, as shown by the record, there can be no doubt that the conclusion of the trial court that the two patents in controversy were property of the partnership is abundantly supported by the law and the evidence. A reading of the record makes it easy to understand why the trial judge decided the case from the bench immediately upon the conclusion of the testimony.

■ Appellant's final contention is that the judgment orders all of the partnership assets, including the two said patents, to be sold by the receiver, and that the patents being in the name of appellant, they may not be sold by the receiver.

This is a mere matter of the proper procedure to carry out the determination of the trial court that the patents were partnership property and should be sold by the receiver along with other partnership assets. In *Cookson* v. *Louis Marx & Co.,* 23 F. Supp. 615, the court said at page 617: ''The patent act provides that patents are assignable in law by instrument in writing. 35 U.S.C.A. § 47; Revised Statutes, § 4898. This does not mean that the patentee must in every case execute the assignment by his own hand. On creditor's bill a court of equity may appoint a trustee to make an assignment of a debtor's patent right in case the debtor himself does not make the required assignment, and an assignment executed by the trustee will pass title to a purchaser. *Ager* v. *Murray,* 105 U.S. 126, 26 L.Ed. 942; *Wilson* v. *Martin-Wilson Fire Alarm Co.,* 151 Mass. 515, 24 N.E. 784, 8 L.R.A. 309.'' It is clear from the authorities that the trial court has the power to order the appellant to execute a transfer to the purchaser at the receiver's sale and to order that if appellant fails to make the proper assignment that an assignment executed by the receiver will pass title to the purchaser. The findings, conclusions and judgment are therefore modified to so provide. As so modified the judgment is affirmed, respondent to recover costs on appeal.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied February 7, 1947, and appellant's petition for a hearing by the Supreme Court was denied March 6, 1947.