## MINERALS SEPARATION, Ltd., et al. v. MIAMI COPPER CO.

(District Court, D. Delaware. July 15, 1921.)

No. 331.

1. Patents ⚯197—"Assignment" must be in writing and with intent to pass present title.

Under Rev. St. § 4898 (Comp. St. § 9444) an assignment of a patent may be made only by a written instrument, and though no particular form of words is essential, yet to constitute an assignment the instrument must be substantially a transfer, actual or constructive, with the clear intent at the time to part with the legal interest, in whole or in part, in the thing transferred, and with full knowledge of the rights so transferred, and an instrument which does not purport to convey any present interest in an existing patent, or in one for which an application is pending, is not an assignment within the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assignment.]

2. Patents ⚯195—Executory agreement to assign held not to operate as assignment.

An agreement between two corporations for the sale by one to the other of property, including certain patents, which bound the seller on completion of the purchase "to execute and do all assurances and things for vesting in" the purchaser the premises mentioned in a schedule which specifically named the patents, and to give to the purchaser the full benefit of the agreement, held executory, and not to operate in itself as an assignment of the patents, though subsequently fully performed by the purchaser.

In Equity. Suit by the Minerals Separation, Limited, and the Minerals Separation North American Corporation, against the Miami Copper Company. On supplemental bill asking that the Minerals Separation North American Corporation be admitted as party complainant. Granted.

Henry D. Williams, William Houston Kenyon, and Lindley M. Garrison, all of New York City, and Thomas F. Bayard, of Wilmington, Del., for plaintiffs.

Charles Neave, Maxwell Barus, and John F. Neary, all of New York City, for defendant.

MORRIS, District Judge. The prior history of this cause is recorded in 237 Fed. 609; 244 Fed. 752, 157 C. C. A. 200; 264 Fed. 528; 268 Fed. 862; (C. C. A.) 269 Fed. 265. The matter now before the court arises upon supplemental bill, answer, and proofs taken thereunder. The supplemental bill was filed against Miami Copper Company, the defendant, by Minerals Separation, Limited, the original plaintiff, hereinafter called the Company, and by Minerals Separation North American Corporation, a Maryland corporation, and alleges that the latter corporation has acquired from the original plaintiff through Minerals Separation American Syndicate (1913), Limited, hereinafter called the Syndicate, the beneficial interest in the patents in suit, and that on March 28, 1917, the Company filed its disclaimer to so much of the thing patented by claims 9, 10, and 11 of letters patent No. 835,-120, one of the patents in suit, as it did not choose to hold or claim by virtue of that patent. The special prayer of the supplemental bill is:

"That your orator, Minerals Separation North American Corporation, have leave to join in, and it does hereby join in, all the prayers of the bill of complaint, and that it have the full benefit of all the record and proceedings heretofore had and taken herein and of the interlocutory decree and injunction, and of the accounting proceedings."

The defendant contends that in July, 1913, the Company parted with and the Syndicate acquired the complete title, both legal and equitable, to the patents in suit and all rights to damages or profits thereunder; that the Maryland corporation, by bill of sale of December 7, 1916, became and now is the sole owner of all the rights so acquired by the Syndicate, and that, consequently, the Company, not having the legal title to the patents, may not further prosecute this suit, either as sole plaintiff or as coplaintiff with the Maryland corporation; that the Maryland corporation must proceed alone in seeking any relief to which it may deem itself entitled; that the disclaimer, having been filed by the Company after it parted with its entire title to the patent, is void; that more than a reasonable time has elapsed since, by reason of the decision in the Hyde Case, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. 286, it became the duty of the owner of the patent to file a disclaimer; that the Maryland corporation, the sole owner, has filed none, and that, for the foregoing reasons, the supplemental bill should be dismissed. The defendant does not deny, but, on the contrary, asserts, that the beneficial interest in the patents passed from the Company to the Syndicate at the time of the execution of the agreement. It does not deny that a person holding the beneficial interest in a patent may properly be joined as coplaintiff with the holder of the legal title. Nor does it deny that all the rights acquired from the Company by the Syndicate were, in December, 1916, transferred to the Maryland corporation and are now owned by it.

The crucial question now for determination is therefore whether in 1913 the Company parted with and the Syndicate acquired the legal title to the patents in suit. The transaction in question between the Company and the Syndicate is evidenced by a written agreement, dated July 8, 1913, the pertinent portions of which are as follows:

"1. The Company shall sell and the Syndicate shall purchase

"First. The letters patent and rights mentioned in the schedule hereto but subject to certain licenses granted by the Company, * * *

"Secondly. The benefit and rights of the Company of and under the said licenses and of any other licenses that may be granted prior to the completion of the purchase, and

"Thirdly. The exclusive right so far as the Company can confer the same to apply for and obtain in the republic of Cuba and the Philippine Islands patents in connection with any of the inventions comprised in the letters patent and applications mentioned in the schedule hereto and generally in connection with processes and apparatus for separating different pulverulent materials by oil selection, gaseous floatation or other surface tension phenomena.

"2. Part of the consideration for the said sale shall be the sum of £93,750, which shall be paid and satisfied by the allotment to the Company, or its nominee or nominees of 187,500 fully paid B shares of ten shillings each in the capital of the Syndicate.

"3. As the residue of the consideration for the said sale, the Syndicate shall indemnify the Company against all liability and obligations of the Company under or in respect of any of the licenses granted by them and particulars of which are set out in clause 1 hereof and shall also indemnify the Company against all liability and obligations of the Company under or in respect of all costs and charges already or hereafter to be incurred by the Company in connection with applying for and taking out patents in the said republic of Cuba and the Syndicate shall further indemnify the Company against the liabilities of the Company under a letter dated second day of March one thousand nine hundred and ten from the Company to one James M. Hyde and against all sums which the Company may have been ordered and may be ordered to pay to the said James M. Hyde in connection with certain litigation pending between the Company and the said James M. Hyde in the United States of America and against the costs, charges and expenses of the Company in connection with the said litigation and the Syndicate shall at once repay to the Company all disbursements already made by the Company on account thereof or in connection therewith. The Syndicate shall be entitled to receive all damages and any other profits or benefits which may be derived from or in connection with the said litigation. ·

"4. The purchase shall be completed on or before the tenth day of October one thousand nine hundred and thirteen at the registered office of the syndicate when one hundred and thirty-seven thousand five hundred fully paid B shares of ten shillings each in the capital of the Syndicate part of the said one hundred and eighty-seven thousand five hundred fully paid B shares shall be allotted to the Company or its nominees and the Company and all other necessary parties if any shall at the expense of the Syndicate, execute and do all assurances and things for vesting in the Syndicate or as it shall direct the premises mentioned in the Schedule hereto and giving to the Syndicate the full benefit of this agreement as shall be reasonably required. As to fifty thousand fully paid B shares of ten shillings each in the capital of the Syndicate the balance of the said one hundred and eighty-seven thousand five hundred B shares the same shall be allotted to the Company or its nominees at the rate of two shares for every one 'A' share of one pound each in the initial capital of the Syndicate part of the last twenty-five thousand A shares in such capital which shall be hereafter allotted that is to say when one of such 'A' shares shall be allotted there shall be allotted to the Company or its nominees two of such fully paid 'B' shares. No new shares in the capital of the Syndicate shall be created or issued until the whole of the shares in the initial capital of the Syndicate shall have been allotted.

\* \* \* \* \* \* \* ● ● ●

"9. The Syndicate shall cause this agreement to be duly filed with the Registrar of Companies pursuant to section 88 of the Companies (Consolidation) Act 1908, and also in the cases of shares allotted to nominees shall cause a sufficient contract to be filed constituting the title of such nominees.

"The schedule above referred to:

## "Part 1.

"1. The benefit of the following letters patent granted in respect of the United States of America: [Here follows a list of United States patents including the first two patents in suit and the application for the third patent in suit].

"2. The benefit of all extensions and prolongation of the terms and privileges granted by any such patents as aforesaid."

It is disclosed by the evidence that 137,500 of the B shares called for by that agreement were allotted to the Company by the Syndicate on or before July 23, 1913, and that on October 6, 1916, the 50,000 additional B shares mentioned in clause 4 of the contract were allotted to the Company. Defendant's construction of the above-mentioned agreement is that the equitable title to the patents passed thereby at the time of its execution, and that the legal title to the patents passed at the time of the subsequent allotment of the shares, namely, on or before July 23, 1913, its position being that upon the subsequent allotment of shares the agreement became effective and operated as an assignment. It does not contend that there was any other assignment. The position of the plaintiffs in the supplemental bill, on the other hand, is that the contract of July 8th is a mere executory agreement of sale to be subsequently consummated and carried out by the performance by each of the parties thereto of such acts, including an assignment, as might be necessary and proper for that purpose.

[1] An assignment of a patent may be made only by an instrument in writing. R. S. § 4898 (Comp. St. § 9444). Conceding that no particular form of words is essential to effect an assignment of a patent (American Tobacco Co. v. Ascot Tobacco Works [C. C.] 165 Fed. 207), yet to constitute an assignment the instrument must be substantially a transfer, actual or constructive, with the clear intent at the time to part with the legal interest, in whole or in part, in the thing transferred, and with the full knowledge of the rights so transferred. Ormond v. Connecticut Mut. Life Ins. Co., 145 N. C. 140, 58 S. E. 997, 998. An instrument which does not purport to convey any present interest in an existing patent, or in one for which an application is pending, is not an assignment within the contemplation of R. S. § 4898. National Cash Register Co. v. New Columbus Watch Co., 129 Fed. 114, 116, 63 C. C. A. 616.

[2] There must be some operative words, expressing at least an intention to assign, in order to constitute an assignment. Campbell v. James, 17 Blatchf. 42, 54; Fed. Cas. No. 2,361. Considering the agreement of July 8th as a whole and applying to it the above legal principles and the ordinary and usual rules of interpretation, I do not find that intention. Defendant construes that portion of paragraph 4 of the agreement providing:

"The Company and all other necessary parties if any shall at the expense of the Syndicate execute and do all assurances and things for vesting in the Syndicate or as it shall direct the premises mentioned in the Schedule hereto and giving to the Syndicate the full benefit of this agreement as shall be reasonably required"

—as the ordinary covenant for further assurances. On the contrary, I think this clause calls for the delivery by the Company to the Syndicate, at the time in that paragraph specified, of an instrument "vesting in the Syndicate * * * the premises mentioned in the Schedule" thereto. It seems to me that the absence from the clause in question of the word "further" or "other," or both, before the word "assurances," is peculiarly significant, and is a definite refutation of defendant's contention. The agreement might be further analyzed and with the same result. The defendant has failed to show any subsequent acts of the parties construing the agreement of July 8th as an assignment. Whether or not the Company and the Syndicate made subsequent agreements extending the time for the performance of the acts required by the agreement of July 8th to be performed by one or both of the parties thereto is, I think, a matter of no moment. The plaintiffs, in my opinion, do not need such subsequent agreements to show that the agreement of July 8th was not an assignment. The absence of such subsequent agreements indicates only that the Company is in default; and, as such default would not operate as an assignment, or as a substitute therefor, I fail to see how the defendant can be concerned therewith. Consequently it follows, and I find, that the Company is, and that the Maryland corporation is not, the owner of the legal title to the patents in issue.

In view of the conclusions hereinbefore arrived at and of what was said by the Supreme Court in Minerals Separation v. Butte, etc., Min'g Co., 250 U. S. 336, 354, 39 Sup. Ct. 496, 63 L. Ed. 1019, touching the disclaimer, I think nothing need be added to show its validity.

I am of the opinion that the prayer of the supplemental bill should be granted.