McCLASKEY v. HARBISON–WALKER RE-
FRACTORIES CO.

No. 8155.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 8, 1943.

Decided Oct. 25, 1943.

MARIS, Circuit Judge, dissenting.

Harvey A. Miller, of Pittsburgh, Pa. (Clarke & Doolittle and Miller & Nesbitt, all of Pittsburgh, Pa., on the brief), for appellant.

Fulton B. Flick, of Pittsburgh, Pa. (Brown, Critchlow & Flick, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The question presented by this appeal is whether a United States patent may be assigned to a purchaser who purports to buy it at a sheriff's sale, the patent having been seized on an alias writ of fieri facias issued under Pennsylvania statutes on a judgment entered in the Court of Common Pleas of Allegheny County, Pennsylvania.

The pertinent facts may be stated briefly. The patent, No. 1,525,328, was issued on February 3, 1925, to Sheaffer and shortly after its issuance was assigned[1] by the patentee to Superior Basic Brick Company. In 1933, Duquesne Light Company obtained a money judgment against Superior in the Court of Common Pleas of Allegheny County which it assigned to the plaintiff, McClaskey. Certain physical assets of Superior were seized under a writ of execution, issued by Duquesne to the use of McClaskey to recover the sum due on the judgment. The proceeds of this sale were credited against the amount due from Superior to McClaskey on the judgment. A writ of fi. fa. was then issued to seize certain other property. Thereafter an alias fi. fa. was issued against Superior, and the directions of counsel to the sheriff accompanying the præcipe for the writ directed that officer " * * * to levy, advertise and sell in satisfaction of the * * * balance of [the] judgment * * * letters patent * * * No. 1,525,328 * * *". The sheriff sold the patent to McClaskey and gave him a bill of sale.

McClaskey brought suit in the court below alleging that the defendant, Harbison-Walker Refractories Company, has infringed the patent. The plaintiff does not seek an injunction but claims treble damages as provided by R.S. § 4919, 35 U.S. C.A. § 67. The defendant asserted as one defense that the plaintiff got no title to the patent under the sheriff's sale and moved for a summary judgment dismissing the complaint pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The court below granted the motion and dismissed the complaint. See 46 F.Supp. 937, 938.

Under R.S. § 4898, 35 U.S.C.A. § 47, a patent may be transferred by the "patentee or his assigns or legal representatives" "by an instrument in writing". In the leading case of Ager v. Murray, 105 U.S. 126, 26 L.Ed. 942, the facts were as follows: The Supreme Court of the District of Columbia, acting pursuant to chancery powers conferred upon it by a statute of the State of Maryland, in force in the District of Columbia (Maryland Stat., 1785, ch. 72, Secs. 7, 13, 25; 2 Kilty's Laws; Laws of District of Columbia Ed. 1868, pp. 326, 328, 333, 336) directed that patents belonging to Ager should be sold and the proceeds of

---

[1] The validity of this assignment is not questioned.

the sale applied to pay a judgment against Ager. The degree of the Supreme Court of the District of Columbia provided specifically that if Ager defaulted in paying the judgment, his rights in the patent should be sold and an assignment should be executed by him, but that if he failed to execute such an assignment, a suitable person should be appointed as trustee to execute it.

■ On appeal Mr. Justice Gray stated, 105 U.S. at page 129, 26 L.Ed. 942, "It has been said by an English text-writer that 'a patent-right may be seized and sold in execution by the sheriff under a fieri facias, being in the nature of a personal chattel.' * * * We are not aware of any instance in which such a course has been judicially approved. But it is within the general jurisdiction of a court of chancery to assist a judgment creditor to reach and apply to the payment of his debt any property of the judgment debtor, which by reason of its nature only, and not by reason of any positive rule exempting it from liability for debt, cannot be taken on execution at law; as in the case of trust property in which the judgment debtor has the entire beneficial interest, of shares in a corporation, or of choses in action." In view of this decision of the Supreme Court of the United States we can entertain no doubt that a patent may be reached and sold by a creditor's bill. Though there is no express statement in the Ager case that the trustee who was to be employed to assign the patent if Ager failed to do so, would have been a "legal representative" within the meaning of R.S. § 4898, this is clearly what the Supreme Court of the District of Columbia and the Supreme Court of the United States had in mind, for the patent otherwise could not have been legally assigned under R.S. § 4898.[2]

In the case of Cookson v. Louis Marx & Co., D.C., 23 F.Supp. 615, the question was presented as to whether an assignment of a patent by a conservator for one who has been legally declared a spendthrift would stand against an assignment made by the spendthrift himself. Judge Patterson stated, 23 F.Supp. at page 617, "The patent act provides that patents are assignable in law by instrument in writing * * *. This does not mean that the patentee must in every case execute the assignment by his own hand. On creditor's bill a court of equity may appoint a trustee to make an assignment of a debtor's patent right in case the debtor himself does not make the required assignment, and an assignment executed by the trustee will pass title to a purchaser * * *. There can be no doubt that legal capacity to make an assignment of patent and the aids to incapacity are matters which Congress might have regulated but which it chose to leave to the law of the state of the assignor's domicile * * *. By law of Illinois a person who is legally declared to be a spendthrift has no capacity to transfer his property. The conservator of such a person has authority to transfer personal property without specific order of the court."

■■ The term "legal representatives" used in R.S. § 4898 is broad enough not only to include a master or a trustee appointed by a court possessing adequate equity power but also a trustee under a trust indenture, a guardian of property, or an executor or administrator, an assignee of an insolvent debtor, or some other officer designated to assign a patent. The tests are the powers of the court and the extent of the authority conferred by it on its officer. In the present state of the law, the authority to assign a patent must come from some proceeding akin to a creditor's bill or a petition seeking the aid of the equity side of the court to enforce a judgment at law, through the appointment of a legal representative. Our inquiry, therefore, must be directed to the question as to whether the Court of Common Pleas of Allegheny County possessed the equitable power to assign the patent to McClaskey by the sheriff at the sale we have described.

■ It is well settled that the courts of Pennsylvania possess no general equitable jurisdiction. This was stated by President Judge Stowe of the Court of Common Pleas of Allegheny County in Bakewell & Kerr v. Keller, 1881, 11 Wkly. Notes Cas. 300. Judge Stowe said, "I have no doubt that in England, and in the courts of the United States, where there is general equity jurisdiction such a bill [a bill to subject a patent right to sale for the satisfaction of a judgment] would be sustained; but

---

2 See Underfeed Stoker Co. v. American Ship Windlass Co., C.C., 165 F. 65, and Cookson v. Louis Marx & Co., D.C., 23 F.Supp. 615. See, also, Walker on Patents, Deller's Ed., vol. 2, §§ 235, 359. Compare Ex parte McPherson, 1905 C. D. 232.

in Pennsylvania, we do not have any equitable jurisdiction except where it is specifically granted (Dohnert's Appeal, 64 Pa. 311), and we must therefore look to the Constitution and the various Acts of Assembly to determine our authority, and not to the general powers of a Court of Chancery."[3]

Jurisdiction in the case at bar lies in Section 24(7) of the Judicial Code, 28 U.S.C.A. § 41(7), and not in diversity of citizenship. The court below had to determine whether what was done was sufficient to constitute an assignment of the patent under R.S. § 4898. What was done was effected under Pennsylvania statutes and a judgment of a Pennsylvania court. The principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is not applicable but we have held that the decision of the Supreme Court of Pennsylvania upon questions of construction of the Constitution of Pennsylvania and of Pennsylvania statutes was binding upon us in determining rights accruing under Pennsylvania law. Mitchell v. Ottinger, 3 Cir., 105 F.2d 334, 338. See, also, the decision of the Circuit Court of Appeals for the Fourth Circuit in Dayton & Michigan R. Co. v. Commissioner of Int.Rev., 112 F.2d 627, 630. In so holding the courts of the United States have followed the rule imposed by the Supreme Court of the United States in cases coming before it on appeals from state courts. See Midland Realty Co. v. Kansas City Power & Light Co., 300 U.S. 109, 113, 57 S.Ct. 345, 81 L.Ed. 540. The principle involved does not depend on the Rules of Decision Act, Section 34 of the Judiciary Act of 1789, 28 U.S.C.A. § 725, which is inapplicable to suits in equity. Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754. In Lindsey v. Washington, 301 U.S. 397, 400, 57 S.Ct. 797, 81 L.Ed. 1182, the Supreme Court stated that it would accept the meaning ascribed to state laws by the highest court of the state and this has been reiterated in later decisions of that Tribunal. See, also, Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 125 A.L.R. 1383. In the case at bar, therefore, if the Supreme Court of Pennsylvania had ruled upon the questions before us we would be compelled to accept its decision. As will appear from this opinion, however, there has been no authoritative determination of these questions by the Supreme Court of Pennsylvania or by any other appellate tribunal and the trial courts are in disagreement. On analogy to the principle of Erie R. Co. v. Tompkins should we try to determine by all the available data the construction which the Supreme Court of Pennsylvania would put upon the Acts of 1836 and 1870 in relation to the facts of the case at bar? We think that we must do so.

The earliest decision relating to the Acts of June 16, 1836 and of April 7, 1870,[4] in respect to the assignment of a patent which has been cited to us or which we have been able to find is Bakewell & Kerr v. Keller, supra. The court held the Acts did not confer such equitable jurisdiction upon the Court of Common Pleas of Pennsylvania as to enable them to decree a sale of a patent to satisfy a judgment. The bill before Judge Stowe was in substance an ordinary creditor's bill except that it includ-

[3] In Dohnert's Appeal the Supreme Court of Pennsylvania held that a nisi prius court had no jurisdiction over a bill in the nature of a bill of interpleader to redeem or extinguish a ground rent. The following decisions reiterate the law that the equitable jurisdiction of Pennsylvania courts is purely statutory: Pitcairn v. Pitcairn, 201 Pa. 368, 50 A. 963; Hogsett v. Thompson, 258 Pa. 85, 101 A. 941; Whyte v. Faust, 281 Pa. 444, 127 A. 234; Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania, 318 Pa. 401, 178 A. 291, 294.

[4] The Legislature of Pennsylvania substituted the special fi. fa. created by the Act of April 7, 1870, 12 P.S. § 1337, for the writ of sequestration created under Section 73 of the Act of June 16, 1836. Compliance with conditions precedent to § 73 such as a return of nulla bona is necessary to comply with the later act. Mausel v. New York, C. & St. L. Ry. Co., 171 Pa. 606, 33 A. 377. As was stated by Judge Mitchell of the Court of Common Pleas of Philadelphia County in Flagg v. Farnsworth, 12 Wkly.Notes Cas. 500, 501, "The Act of June 16, 1836, section 72 [12 P.S. § 1332], provided that after demand, etc., a fi. fa. might issue to seize personal property of a corporation, and upon failure to find such property sufficient to pay the debt, and a return of nulla bona, a writ of sequestration might issue. The Act of April 7, 1870, provides that 'in addition to the provisions of the Act of 1836,' 'and in lieu of the proceedings by sequestration under said Act,' plaintiffs may have execution by fi. fa., etc."

ed allegations that the defendant was guilty of constructive fraud in not making his property available for the payment of his debts in an effort to meet the terms of another act. Keller, however, was an individual and the Acts of June 16, 1836, and of April 7, 1870, were intended to apply to executions against corporations. The decision might have gone off upon this ground and no other.

In Flagg v. Farnsworth, 1882, 12 Wkly.Notes Cas. 500, on facts almost upon all fours with those of the case at bar, the Court of Common Pleas of Philadelphia County stated that in view of the fact that the Act of April 7, 1870, authorized the sale upon alias fi. fa. of "Any personal, mixed or real property, franchises and rights" a patent could be sold. It decided, however, that because the sheriff had not made a return of nulla bona on the first fi. fa. the seizure upon the second fi. fa. was invalid.[5]

In Harrington v. Cambridge, 1884, 14 Weekly Notes Cas. 456, the Court of Common Pleas of Philadelphia County, without specific reference to the Acts sub judice, and without extended discussion, set aside a levy on and a sale of a patent purportedly made under the Act of 1870.

In Rutter v. Garsed, 1887, 8 A. 170, 171, 5 Sadler, Pa. 44, the Supreme Court of Pennsylvania had before it a suit commenced by a bill in equity in which the complainant, who had procured a money judgment in a suit at law and a return of nulla bona by the sheriff upon a fi. fa. on that judgment, attempted to seize and sell the respondent's patents in satisfaction of the judgment. The Supreme Court in a per curiam opinion stated, "The mere refusal to pay a debt is not a fraud. We know of no act of assembly which authorizes the property in question to be reached by a bill in equity in the manner here attempted." The court seemed to be of the opinion that a showing of fraud was necessary in order to maintain a creditor's bill.

Obviously this ruling is not pertinent to the questions now before us.

In Philadelphia & B. C. R. Co.'s Appeal, 1872, 70 Pa. 355, 357, the Supreme Court of Pennsylvania, by Chief Justice Thompson, held that the Act of 1870 authorized the seizure and subsequent sale of the property and franchise of a railroad company under a writ of alias fi. fa. under the 1870 Act.

In Doud and Miller, Trustees, v. Bonta Plate Glass Co., 1898, 45 Pittsb.L.J. 358, 28 Pittsb.L.J.,N.S., 358, Judge Buffington, then a judge of the District Court of the United States for the Western District of Pennsylvania, stated: "The bill seems to have been filed under a misapprehension. The complainants therein aver 'that letters patent cannot be seized and taken in execution to satisfy * * * [a] judgment by any of the ordinary forms of execution * * and that the courts of the State of Pennsylvania have no jurisdiction of a proceeding to render * * * letters patent liable to the payment of said judgment, either in law or equity.' This is not correct. In the case of Erie Wringer [Mfg.] Co. v. National Wringer Co. [infra] * * * it was held by this court that patents could be sold on a writ of fi. fa. from the State Court under the provisions of the Act of April 7, 1870. * * *" Judge Buffington pointed out also that the Act of May 9, 1889, Sec. 1, P.L. 172, 17 P.S.Pa. § 294, referred to more specifically hereafter, was then in effect.

In Erie Wringer Manufacturing Co. v. National Wringer Co., C.C.1894, 63 F. 248, Judge Acheson held that an alias fi. fa. issued under the Acts of 1836 and 1870 was sufficient to charge patents for the payment of an insolvent corporation's debts. The court relied not only upon Ager v. Murray, but also on Flagg v. Farnsworth and Philadelphia & B. C. R. Co.'s Appeal. Judge Acheson held that while patents were not mentioned expressly in the Act of 1870,

---

[5] In the case at bar no return of nulla bona was made by the sheriff who found small quantities of property which he proceeded to sell under the various writs. The amount of property seized was always insufficient to satisfy the judgment. In our opinion the returns made by the sheriff which always showed sales insufficient in amounts to pay the judgment, were sufficient to sustain the seizure upon the writ under which the patent was sold. Each execution was issued in the manner required by law and each was returned unsatisfied. We think that it is the intention of the general assembly of Pennsylvania only to require the creditor to show that he does not have the ability to collect against his debtor by ordinary process of law before he may resort to the special writ. See Guest v. Lower Merion Water Co., 142 Pa. 610, 615, 21 A. 1001, 1002, 12 L.R.A. 324, and 14 Am.Jur. § 25, p. 691.

the phrase "any personal, mixed or real property, franchises and rights" was broad enough to include patent rights.

In Wolf and Warren, Executors v. Bonta Plate Glass Co., 6 Northam. Law. Rep. 397 (1897), Judge Archbald, sitting in the Court of Common Pleas of Lackawanna County, dissenting from the views expressed in Flagg v. Farnsworth and Erie Wringer Mfg. Co. v. National Wringer Co., held that a patent might be sold under a creditor's bill but that the Act of 1870 conferred insufficient powers on the court to enable it to seize a patent. Judge Archbald said, 6 Northam. Law Rep. at page 400, "The intangible character of the patent undoubtedly enters into the question; but the fact that the right is entire; that it exists in no definite locality, but on the contrary is co-extensive with the whole federal government; that an execution from a court of limited territorial jurisdiction of necessity can only affect it to a local and limited extent; and, above all, the necessity, in order to make the sale complete, for an assignment or transfer in writing duly executed and recorded in conformity with the federal statutes, are just as material and have fully as important a bearing. These can no more be met and overcome by a special fi. fa. under our statute than they can be by the ordinary writ."[6]

The decision of the Court of Common Pleas of Northampton County in Messinger v. Knappenberger, 1910, 12 Northam. Law Rep. 380, deals indirectly with the question before us. Judge Stewart stated that Bakewell & Kerr v. Keller was decided on the ground of limited equitable jurisdiction of the courts of Pennsylvania and that the Act of May 9, 1889, 17 P.S. § 294, which gave the Courts of Common Pleas of Pennsylvania "jurisdiction in equity" "to assist" a judgment creditor "to reach and apply" to his judgment "letters patent", left " * * * no question as to the jurisdiction of the courts in Pennsylvania * * *" to subject a patent to execution under a judgment of a court of Common Pleas. Judge Stewart did not refer to the Acts of 1836 and 1870 which were inapplicable as the defendant was not a corporation. The fact that the Pennsylvania Legislature passed the Act of 1889 might serve as evidence that the existing laws were deemed to be insufficient. But, the Act of 1889 might well be considered merely as supplementary since it is applicable to individuals, whereas the earlier Acts were restricted to obtaining the transfer of rights from corporations. We are of the opinion, however, that the plaintiff is not in a position in the case at bar where he can avail himself of the benefits of the Act of 1889. Though we can find no case which explains how the assistance of the Act is to be invoked we conclude that such assistance would be given by the court by an order on a bill or petition. The record in the case at bar shows that no such assistance was sought by or given to the plaintiff.[7] The Act of 1889 therefore is of interest only in so far as it may serve to throw light on the Acts of 1836 and 1870.

We entertain no doubt, as we have indicated already, that an assignment of the patent, which is sued on in the case at bar could have been made by a trustee, sequestrator or master, appointed by a

6 The plaintiffs lays emphasis on the later decision of Judge Archbald in Shelby Steel Tube Co. v. Delaware Seamless Tube Co., 1907, 151 F. 64, when he was a judge of the Circuit Court, Eastern District of Pennsylvania. In this case, Judge Archbald said, 151 F. at page 65: "It has been held that a sale on execution of all the property rights, and franchises of an insolvent corporation was effective to pass title to a patent owned by it. Erie Wringer Mfg. Co. v. National Wringer Co. * * *. And, if so, why not also a voluntary conveyance in similar terms?" The plaintiff takes the position that by these words Judge Archbald recanted the doctrine expressed by him in the Wolf and Warren case. The assignment in the Shelby Steel Tube Co. case was, however, a voluntary one, and Judge Archbald's words were purely dicta. His brief expression in the Shelby Steel Tube Co. case ten years later is not entitled to the weight the plaintiff seeks to give to it.

7 The plaintiff has stated in its brief, p. 10, in respect to his failure to proceed under the Act of 1889, as follows: "Only in case the sheriff would have been unable to make actual seizure of the patent on the alias writ of fi. fa. and the writ had been so returned, would plaintiff under the Act of 1889, have been in position to resort to a court of equity. In other words, had a proceeding in equity been entered instead of or before exhausting the remedy at law by the alias writ of fi. fa. under special directions to the sheriff, a defense could have successfully been maintained on the basis that plaintiff had an adequate remedy at law."

court possessing general equity powers and that such an assignment would have met the requirements of R.S. § 4898. The assignment of a patent must be in writing to fulfill the requirements of the federal statute. Though no particular form of words is required the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent. Owen v. Paramount Productions, D.C., 41 F.Supp. 557, 560; Minerals Separation, Ltd., v. Miami Copper Co., D.C., 275 F. 572, 575; Rhodes-Hochriem Mfg. Co. v. International Ticket Scale Corp., D.C., 57 F.2d 713, 714. The bill of sale for the patent executed by the sheriff to the plaintiff shows an unmistakable intention to convey to the plaintiff everything which the sheriff had to sell.[8] In our opinion it will serve as an assignment if the sheriff had the power to execute a valid assignment of the patent.

■ The sheriff was a "legal representative" of Superior Basic Brick Corporation. The fact that a sheriff made the assignment instead of a trustee, a master, or a sequestrator, officers known to chancery practice, surely is of no significance. The title of the officer is immaterial. The important thing is the authority of that officer to make the transfer or assignment, an authority which can be evidenced only through the power of the court whose judgment he executed.

Section 74 of the Act of June 16, 1836, 12 P.S. § 1333, as it stood prior to the amendment effected by the Act of 1870, was an act which created a means, very similar to that given by a decree on creditor's bill, whereby a sequestrator appointed by the court took possession of all of the assets of an insolvent corporation, in order that they might be ratably distributed, pursuant to an order of the court, to all creditors of the insolvent corporation. The act presents all the indicia of a creditor's bill statute though it does so in rather antique terms. If the word "receiver" had been used in lieu of the word "sequestrator" its nature would be more apparent to present

day legal minds. Section 1 of the Act of April 7, 1870, 12 P.S. § 1337, grants an alternative method of relief. The sheriff, acting pursuant to the later act under an alias fi. fa., is enabled to seize both the tangible and intangible assets of a corporation (which is probably insolvent since its tangible assets which may be seized by the sheriff on an ordinary fi. fa. are insufficient to meet a judgment against it) and sell them to meet the judgment precisely as such assets might be sold by a receiver or sequestrator if they had come into the possession of such an officer by operation of the order of his appointment. The difference lies in the fact that the sequestrator under the 1836 statute must distribute the "nett" assets (probably the sum brought by the sale of the assets less expenses) to all the creditors while the sheriff under the 1870 Act sells the assets for the benefit of the single creditor under whose præcipe the alias fi. fa. was issued. The remedy remains essentially the remedy made available to a judgment creditor under a creditor's bill.

■ There is another difference, however, between the two acts. Section 74 of the 1836 Act provides that the sequestrator shall take charge of "property and funds". Property in Pennsylvania in 1836 was the right and interest which a man had in lands and chattels to the exclusion of others. Morrison v. Semple, 1813, 6 Bin., Pa., 94. The word "property" in 1836 was certainly not intended to include such incorporeal rights as franchises or patents, i. e., grants by a sovereign of specific rights, privileges, or exemptions to a citizen or subject. The 1870 Act substantially enlarged the nature of the assets of an insolvent corporation which could be seized by making subject to the fi. fa. "* * * any personal mixed or real property, franchises and rights" of the corporation. The grant of letters patent is commonly considered to be a franchise. See Bloomer v. McQuewan, 14 How. 539, 548, 549, 14 L.Ed. 532, and United Shoe Machinery Corporation v. United States, 258 U.S. 451, 463, 42 S.Ct. 363, 367, 66

---

[8] The b'll of sale was as follows:

"Sheriff's Office
    Pittsburgh, Pa., Nov. 9, 1939

F. J. McClaskey
  Bought of John Heinz, Sheriff
  At Sale of Superior Basic Brick Company #100–Sixth St., Pitts. Pa.

Letters Patent granted to James E. Sheaffer
Burnham, Pa.  Patent 1,525,328 dated Feb. 3, 1925
    "Refractory Material"
         Cash $15.00
Received payment John Heinz Sheriff
  Per H. B. Furlong Deputy."

500

L.Ed. 708.[9] The language of the 1870 Act is clearly sufficient to authorize the assignment of a patent. We conclude that the Supreme Court of Pennsylvania would so hold.

▮▮▮ The argument made in some of the earlier cases (see Carver v. Peck, 131 Mass. 291, and Stevens v. Gladding, 17 How. 447, 451, 15 L.Ed. 155) that since the monopoly of a patent is nation-wide no court of limited territorial jurisdiction has the power to deal with it, is unimpressive. If it were sound, no court, federal or state, could deal with any patent. The Court of Common Pleas of Allegheny County in issuing its fi. fa. was acting under the aegis of a judgment rendered in personam against Superior. This should be sufficient. Nor can we subscribe to the doctrine apparently enunciated in Harrington v. Cambridge, supra, which is to the effect that a patent is so peculiarly a monopoly under federal law that a state court may not touch it in any event.

▮▮▮ We think that to effect the assignment of a patent it is not necessary to observe a precise formula so long as what is done meets the substance of the requirements of the federal statute. We think that the acts of the sheriff of Allegheny County met the requirements of R.S. § 4898. He proceeded under a writ issued out of a court the jurisdiction of which afforded McClaskey relief of the same kind which he would have received under a creditor's bill in a court of unlimited equity jurisdiction. The sheriff sold the patent and gave a bill of sale intended to transfer and assign all interest in the monopoly to the plaintiff. The sheriff acting pursuant to the court's order may be considered a legal representative under R.S. § 4898 in the same manner as a trustee specifically appointed for that purpose.

The judgment will be reversed.

MARIS, Circuit Judge (dissenting).

I find myself unable to join in the majority decision because it seems to me that my brethren are giving judicial approval to what Justice Gray in the case upon which they rely (Ager v. Murray, 105 U.S. 126, 129, 26 L.Ed. 942) said had never received such approval and which did not receive approval from him, namely, that "a patent-right may be seized and sold in execution by the sheriff under a fieri facias". Passing the question whether the Pennsylvania Act of April 7, 1870, P.L. 58, 12 P.S.Pa. § 1337, authorizes such a seizure and sale, as to which the Pennsylvania courts are in disagreement, I am satisfied that a Pennsylvania sheriff, elected by the people and commissioned by the governor, is not acting as a legal representative of the patentee when he seizes and sells a patent under a writ of fieri facias and gives a bill of sale therefor to the purchaser. His character is, in my view, in no sense analogous to that of a trustee specially appointed by a court of equity to sell and assign for and on behalf of a debtor his interest in a patent in case the debtor himself refuses to obey the court's decree to do so.

In order that an assignment of a patent may be recognized it must, under the terms of Sec. 4898, Rev.Stats., 35 U.S.C.A. § 47, be made either by the patentee himself or by his assigns or "legal representatives". Ager v. Murray held that a trustee appointed by a court of equity to assign a patent for the patentee in case the latter failed to obey its decree to do so was the patentee's legal representative within the meaning of Sec. 4898. It is too far a cry from reality for me to hold that a sheriff who seizes and sells a patent at the instance of the patentee's creditor does so as a representative, legal or otherwise, of the patentee. I should, therefore, hold that the bill of sale given by the sheriff to McClaskey in this case passed no title to the patent under Sec. 4898.

In recognition, as I think, of the proposition that a sheriff has no power to make an effective assignment of a patent under Sec. 4898, Rev.Stats. the Pennsylvania legislature passed the Act of May 9, 1889, P.L. 172, 17 P.S.Pa. § 294, which conferred upon the courts of common pleas jurisdiction in equity to assist a judgment creditor to reach a patent belonging to his debtor. Under this act McClaskey might have secured the effective sale of the patent through a decree directing its assignment by the patentee or, in case of his refusal to obey, by a trustee appointed to assign it for him, as authorized by Ager v. Murray. I do not find either in the record or

---

[9] In the first case just cited the Supreme Court said, "The franchise which the patent grants, * * *".

In the second case cited, the Court said,

"From an early date it has been held by this court that the franchise secured by a patent consists * * * in * * *".

in his brief any satisfactory explanation as to why he did not follow the procedure which the Act of 1889 authorizes.