Frank B. Killian v. Commissioner.
Killian v. Commissioner
Docket No. 1289.
United States Tax Court
1944 Tax Ct. Memo LEXIS 166; 3 T.C.M. (CCH) 753; T.C.M. (RIA) 44244; July 27, 1944
*166 O. H. Chmillon, Esq., 920 Southern Bldg., Washington, D.C., and Donald Gottwald, Esq., 1101 First Central Tower, Akron, O., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves income tax deficiencies for the years 1939, 1940 and 1941 in the respective amounts of $3,170.20, $9,476.94 and $9,799.78. The sole question presented is whether petitioner realized capital gain or ordinary gain from an installment sale made on October 3, 1939. Petitioner is an individual residing in Doylestown, Ohio. His tax returns for the years in question, computed on the cash receipts and disbursements basis, were filed with the collector for the 18th district of Ohio. The case was submitted upon a stipulation of facts, incorporating as a part thereof certain exhibits, and upon oral and documentary evidence. The facts stipulated are found accordingly. We include herewith only a summary of the stipulation together with such facts otherwise established as are material to the issue presented. Findings of Fact On April 23, 1938, petitioner and James Tyrrell, Trustee, were each owners of an undivided 37 *167 1/2 percent interest and P. H. Stevens was the owner of an undivided 25 percent interest in certain domestic and foreign patents and patent applications covering processes and apparatus for manufacturing rubber products, sometimes hereinafter called the "Killian patents." The Killian patents previously had been owned by a corporation and later held by a trust in both of which the three parties, or the predecessor in interest in the case of James Tyrrell, Trustee, had enjoyed, respectively, stock and beneficial interests in the percentages named above. The trust, which had been attacked by the Commissioner as taxable as a corporation, was terminated and petitioner, Tyrrell, Trustee, and Stevens, executed a partnership agreement on April 28, 1938. After reciting the joint ownership of the patents, the previous existence of the trust and its termination, the agreement provided that the parties thereby united as partners under the firm name of Frank B. Killian & Company; that the object of the partnership should be "to facilitate and simplify the collection for and distribution to the parties hereto of all royalties derived from said letters patent and applications for letters patent, *168 in accordance with their respective interests therein, as hereinafter provided," and "to engage in the future, in the business of developing and exploiting certain apparatus and machinery covered by said letters patent, and the granting of licenses * * * and the doing of all things necessary and incident thereto"; and that the net royalties received by the partnership should be "divided among the parties hereto in accordance with their respective interest in and to said letters patent and applications for letters patent, which interest it is mutually and unanimously agreed, is owned by the parties hereto in the following undivided fractional interest: Frank B. Killian
37 1/2%
James Tyrrell, Trustee
37 1/2%
P. H. Stevens
25%" and that profits and losses should be shared on the foregoing pro rata basis. The agreement also contained provisions regarding the making of contracts, location of the office, maintenance of books, records, bank accounts and the period of the firm's existence. It did not provide for or acknowledge the receipt of capital contributions from the partners or set forth the composition of the partnership assets. When the partnership was formed it was orally *169 agreed among the parties thereto that the Killian patents should be turned over to the partnership. Attorneys were directed to prepare appropriate assignments to effectuate this purpose. Through inadvertence this was not done at the time, although a bill was rendered for services in connection with drawing at least one of such assignments. It was understood and assumed by the original partners, until July 1943, however, that title to the patents had been so transferred to the partnership. Then, for the first time, it was discovered that the record title was not in the partnership but was, on the contrary, variously existing in the name of the trustee of the former trust or in the names of the original partners individually. Thereupon written assignments to the partnership were drawn, executed and filed in the United States Patent Office covering all of the Killian patents. In the meantime the partnership had filed a suit or patent infringement, entered into a license agreement, made Ohio intangible tax returns and paid taxes on the theory that it owned the patents, and purchased two infringing machines. On October 3, 1939, petitioner signed a "Memorandum of Agreement" wherein it *170 was stated that for $190,000, "I hereby assign, sell and transfer to Maurice Gusman, * * * all my right, title and interest in and to an undivided Thirty-seven and one-half per cent (37 1/2%) share in and to a partnership business, and all the assets and property thereof, known as Frank B. Killian & Company." The purchase price was to be paid in installments as follows: $2,000 down, $25,000 on or before October 15, 1939, $63,000 on January 2, 1940, and $50,000 on both January 2, 1941 and 1942. On the same date petitioner executed a "Bill of Sale of Partnership Interest" wherein it was provided, "I hereby sell, assign and transfer to Maurice Gusman, * * * an undivided thirty-seven and one-half per cent (37 1/2%) interest in and to Articles of Co-Partnership, dated April 23rd, 1938, * * * and the assets and business owned and operated pursuant thereto." The following day an assignment to Gusman of "all my right, title and interest in and to the foregoing Articles of Co-Partnership and all property and business mentioned and described therein" was typed on the last page of the partnership agreement and signed by petitioner. Coincident therewith Gusman signed an escrow arrangement whereby *171 certain collateral was delivered to an escrow agent as security for Gusman's performance of his agreement with petitioner. None of the aforementioned documents of October 3 and 4, 1939, contained any reference to the Killian patents. Excluding such patents, the partnership's assets on October 3, 1939, consisted of $47.18 in cash, an interest in a $20,000 insurance policy on the life of an employee which had been in force about two years, a pending lawsuit for patent infringement and rights under four license agreements to others. In the sale evidenced by the documents described above Gusman and petitioner were represented by the same attorney. He was also the attorney who drew the partnership agreement and one of those who had been directed to perfect the transfer of patent titles to the partnership. He advised Gusman that the partnership owned the patents. Gusman paid to petitioner the $190,000 in the installments called for by their agreement. The total gain realized by petitioner on the sale was $152,500. Petitioner, in determining his taxable net income for the years in question, was entitled to report income from the transaction on the installment sales basis under section *172 44 of the Internal Revenue Code and he did elect to so report it. The income from the sale received in 1939, 1940 and 1941, so computed, amounts, respectively, to $21,671.01, $50,565.69 and $40,131.50. Opinion It is agreed that petitioner realized a gain of $152,500 from the October 3, 1939, sale to Gusman, that such gain is reportable on the installment basis under section 44 of the Internal Revenue Code and that, pursuant to such section, $21,671.01, $50,565.69 and $41,131.50 of such gain constitute income in the years 1939, 1940 and 1941, respectively. The parties are at odds only as to whether section 117 of the Internal Revenue Code applies to limit the gain taken into account in computing net income to 50 percent thereof. Respondent concedes that 50 percent is the proper percentage if the transaction in question embraced the sale of a capital asset. Respondent further concedes that a partnership interest is a capital asset. However, he contends that what petitioner primarily sold to Gusman was an undivided interest in patents; that patents, being subject to depreciation, are not capital assets; and that the gain, therefore, is taxable in full as ordinary income. Petitioner *173 admits that patents are not capital assets. Hence, the issue resolves itself into the question of whether petitioner sold to Gusman purely an interest in the partnership of Frank B. Killian & Company, as petitioner contends, or primarily his undivided interest in the Killian patents. The evidence clearly demonstrates that on the date of the sale it was believed by petitioner and Gusman that the partnership had title to the Killian patents. The original partners had orally agreed that their undivided interests in the patents be turned over to the partnership coincident with its formation, had instructed their attorneys to prepare appropriate instruments of assignment, had assumed that their purpose had been accomplished and Gusman had been advised by the responsible attorney that the partnership owned the patents. However, despite the intention to invest the partnership with legal title to the patents, written assignments to the patents were not executed and filed until long after October 3, 1939. In this situation, respondent argues, "that which was actually done must prevail over good intentions." Patents being the subject matter involved, we agree that at least legal title to the *174 Killian patents, as distinguished from the equitable title thereto, was not vested in the partnership on Ocober 3, 1939, because of the partners' failure to assign to the partnership their undivided interests in such patents by an instrument in writing. United States Revised Statutes, § 4898, U.S.C.A. Title 35, § 47, provides, in part, as follows: Every patent or any interest therein shall be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States. * * * This statute is controlling in all cases involving the transfer of patents. Congress has the right to impose formal requirements upon the manner of the transfer of patents and has done so by the enactment of the cited statute, Owen v. Paramount Production, Inc., 41 F. Supp. 557, which requires that legal title be assigned only by an instrument in writing. McClaskey v. Harbison-Walker Refractories Co., 138 Fed. (2d) 493; Rhodes-Hochriem Mfg. Co. v. International Ticket Scale Corp., 57 Fed. (2d) 713; *175 Minerals Separation, Ltd., v. Miami Copper Co., 275 Fed. 572. The statute, however, does not preclude the acquisition of equitable interests in patents under oral contracts. Spears v. Willis, (N. Y. 1897) 45 N.E. 849; Whitcomb v. Whitcomb, (Vt. 1911) 81 Atl. 97. Nor are contracts for the sale of patent rights within the statute of frauds. Obear-Nester Glass Co. v. Lax & Shaw, Ltd., 11 Fed. (2d) 240. It follows that, while the partnership may be said to have acquired equitable title to the Killian patents upon its formation by reason of the oral agreement of petitioner, Tyrrell, Trustee, and Stevens it did not acquire the legal title to this property until July 1943, when written assignments to the partnership were executed. But this determination does not assist respondent to the conclusion that petitioner sold to Gusman undivided interests in patents. The same law which requires that transfer of patents to the partnership be evidenced by an instrument in writing likewise requires that transfer of the same patents to Gusman be evidenced by an instrument *176 in writing. Moreover, the instrument must be unambiguous and show a clear and unmistakable intent to part with the patent. McClaskey v. Harbison-Walker Refractories Co., supra;Rhodes-Hochriem Mfg. Co. v. International Ticket Scale Corp., supra.It should distinctly describe the patent assigned. Beidler, et al. v. Davis, (Ct. App., Ohio, 1943) 50 N.E. (2nd) 613. An instrument which does not purport to convey any present interest in an existing patent, or one for which an application is pending, is not an assignment within R.S. § 4898. Minerals Separation, Ltd. v. Miami Copper Co., supra;Owen v. Paramount Production, Inc., supra.An examination of the operative instruments covering the sale from petitioner to Gusman discloses that no mention was made of the Killian patents. Manifestly, in this circumstance, they could scarcely be said to show a clear and unmistakable intent to part with a number of specific patents. This being so, the authorities cited above prevent a conclusion that the sale embraced a transfer of patents as such. *177 What petitioner sold was his share and interest in the Frank B. Killian & Company partnership's business, assets and property, whatever they were on October 3, 1939. This was all that he sold and we so hold. It follows that petitioner, in computing his net income from the sale, was entitled to the applicable holding period percentage set forth in section 117. Petitioner has confessed that his income from the sale as reported should be increased in 1939, 1940 and 1941, by the respective amounts of $35.50, $82.90 and $65.75. That effect may be given to this admission. Decision will be entered under Rule 50.