ROGERS v. COMMISSIONER OF INTER-
NAL REVENUE.

No. 9868.

United States Court of Appeals
Third Circuit.

Argued Oct. 11, 1949.

Decided Feb. 21, 1950.

George E. Beechwood, Philadelphia, Pa.
(Lewis Weinstock, Conlen, LaBrum &
Beechwood, Philadelphia, Pa., on the
brief), for petitioner.

Fred E. Youngman, Washington, D.C.
(Theron Lamar Caudle, Assistant Attorney
General, Ellis N. Slack, Robert N. Ander-
son, Special Assistants to the Attorney Gen-
eral, on the brief), for respondent.

Before McLAUGHLIN and KALOD-
NER, Circuit Judges, and FEE, District
Judge.

JAMES ALGER FEE, District Judge.

Appeal has been taken from assessment
of deficiency in the income tax of Lucille H.
Rogers,[1] petitioner. No determination of
fact is involved. The Tax Court concluded
as matter of law that moneys received in
1944 by Mrs. Rogers from American Liber-
ty Steamship Corporation[2] were not pro-
ceeds of a sale by her of a long term cap-
ital asset, and were therefore taxable as in-
come.

The facts on which there is agreement
follow: Before August 16, 1943, Mrs. Rog-

1. Hereinafter called "Mrs. Rogers."

2. Hereinafter called "Liberty."

ers was the absolute and exclusive owner of all issued stock of American Range Lines, Inc.[3] Range, which was in the shipping business but had not owned or operated vessels after the middle of 1942, was attempting to have War Shipping Administration allocate some vessels to it under general agency agreement. Likewise, Liberty was negotiating with the same agency for the same purpose. The War Shipping Administration suggested a pooling of interests in order that compliance with governmental requirements might be accomplished. Mrs. Rogers, in order to induce Liberty to engage in this enterprise, made vital representations and warranties as to incorporation, corporate structure, freedom from legal action, debts and taxes, financial position, and corporate minute record of Range. Mrs. Rogers further agreed to protect the financial position of Range to the extent that she guaranteed a contribution of $85,000.00, equal to that of Liberty in the "joint venture." As security for performance of these by Mrs. Rogers, she agreed to deposit with a bank $36,168.99 in cash. Mrs. Rogers further agreed that all losses of the enterprise should be borne equally by her and by Liberty. These stipulations were all included in a contract, to which Mrs. Rogers was a party, whereby Range and Liberty were to engage in a "joint venture" by merging personnel and capital so contributed to operate under the government general agency agreement. The avatar of Range was named "American Range-Liberty Lines, Inc.,"[4] which was restricted so that all its powers of independent action were atrophied and the corporate form was used simply as a vehicle of the "joint venture" carried on by Mrs. Rogers and Liberty group, which, according to the contract, shared equally the stock of the metamorphized corporation, the control of the corporation, the capital contribution, and the losses of the new enterprise. Mrs. Rogers performed all of the covenants and agreements which she personally assumed. There had been in the first contract elaborate provisions for dissolution of this business in the event the general agency con-

tract was cancelled. The controls on action of Range-Liberty and the impossibility of coordinated action were such that, after some months of operation, in which at first there were losses and subsequently substantial profits, the management came to an impasse. The parties liquidated the joint venture by two contracts, one with Mrs. Rogers and the other with Range-Liberty.

By the contract with Mrs. Rogers, Liberty agreed to pay her $75,000.00 for her share of the business, but Mrs. Rogers was to credit thereon $11,293.26 received by her from Range-Liberty as half the proceeds of the joint operation. Range-Liberty was to keep all the assets which it had at the initiation of the venture, to allow Liberty to be substituted for it under the general agency agreement, and was to retain the amounts paid into it by Mrs. Rogers as capital contributions.

The Commissioner assessed a deficiency. This action is now justified on the grounds that (1) the amounts paid to Mrs. Rogers by Range-Liberty and credited on the purchase price and (2) the first installment on the purchase price paid by Liberty to Mrs. Rogers in 1944, constituted income.

█ As to the first amount which was the sum of the proceeds of the operation of the business, there is no question but that this was income to Mrs. Rogers. The tactical error in claiming this sum on the same footing as the installment of the purchase price probably brought about the assessment of both deficiencies. The propriety of the position of Commissioner on the first amount was conceded by Mrs. Rogers in the Tax Court, but, for some reason not entirely clear, it was again controverted in the briefs on this appeal. Suffice it to say, counsel for petitioner consented to affirmance upon this feature.

The sole question of law here is whether the interest of Mrs. Rogers in the business of operating ships for the government under the general agency agreement was a long-term capital asset. The contention of Mrs. Rogers is that the sale of her interest in the going concern or business constituted

3. Hereinafter called "Range."

4. Hereinafter called "Range-Liberty."

"capital gain" and was not "income," as defined in the statute. The position of the Commissioner, as set out in the briefs on this appeal, on the other hand, is that all of the assets acquired by Liberty came from Range-Liberty and that the first installment of the purchase price, in the sum of $8,706.74, represented either (1) distribution of proceeds from sale of assets of Range-Liberty, or (2) payment of damages to Mrs. Rogers by Liberty.[5]

As to the second proposition, no damages were due from Liberty to Mrs. Rogers. She may have had claims for specific performance or accounting, which explain the references in the contract of sale of her interest. The joint management feature did not work out. Mrs. Rogers and the Liberty group were unable to cooperate and successfully handle the business. Some action was required. Instead of litigating, Liberty bought the Mrs. Rogers interest in the venture. This is the normal explanation, while the damage theory is strained and, we hold, untenable.

We turn then to first postulate of the government, which is that the amounts so paid were the proceeds of sale of assets by Range-Liberty. In order to sustain this proposition, a complete negation of any interest of Mrs. Rogers in the transaction must be assumed. Indeed, the position of the Commissioner is that her interest was solely that of a stockholder in Range-Liberty. To buttress this argument, it is pointed out that the term "partnership," as defined in the statute,[6] includes a syndicate, group, pool, joint venture or other unincorporated association, "through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation;"

Notwithstanding the language of the statute, there are joint ventures or syndicates in which individuals and corporations have capital assets based upon capital contributions. It must be assumed that the Commissioner does not deny that there can be "a joint undertaking both in management and capital investment," United States v. Landreth, 5 Cir., 164 F.2d 340, 341, in which the business done is the enterprise, entirely separate from the property used.[7] Killian v. Commissioner, 3 T.C.M. 753, is an example of a joint enterprise where the agreement was for the exploitation of certain patents by a partnership. There the sale of an interest in the venture was held a sale of a capital asset, although the partnership did not own the patents exploited.[8] So also, transfer of an interest in a business is a sale of capital assets, even though the price approximates value of the same share of the physical properties alone. Dudley T. Humphrey v. Commissioner, 32 B.T.A. 280. Likewise, the assignment of a share in an agency distributing milk in paper containers bears an analogy to the business here transferred. In re Smoak, 43 B.T.A. 907.

In many transactions which have passed before the Courts, the mere fact that a corporation is involved in a joint venture has not been frowned upon. First Mechanics Bank v. Commissioner, 3 Cir., 91 F.2d 275. It is true enough that, if the corporate form were used as a subterfuge or to avoid taxation or to gain an unfair advantage by limiting losses, the masquerade would be futile. Burnet, Commissioner v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399. Likewise, even a sale of property of a corporation, which is wholly owned by a sole stockholder, cannot be made so that the proceeds of the sale will pass to the stockholder without tax lia-

---

5. There was no finding that there was a sale of assets by Range-Liberty nor that Mrs. Rogers had suffered damage. See Rupple v. Kuhl, 7 Cir., 177 F.2d 823. In the instant case, of course, only construction of written documents is involved.

6. § 3797(a) (2) of the Internal Revenue Code, 26 U.S.C.A.

7. See Seattle Brewing & Malting Co. v. Commissioner, 6 T.C. 856, affirmed 9 Cir., 165 F.2d 216, rehearing denied 9 Cir., 166 F.2d 326; Rainier Brewing Co. v. Commissioner, 7 T.C. 162, affirmed 9 Cir., 165 F.2d 217, rehearing denied 9 Cir., 166 F.2d 324.

8. See also United States v. Adamson, 9 Cir., 161 F.2d 942.

bility. Such a payment is still a dividend whether it passes through the corporate coffer or not. Moline Properties, Inc., v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499.

The facts here involved make the distinctions clear. Range was a corporation solely owned by Mrs. Rogers. Apparently to conform with the requirements of the War Shipping Administration, the corporate form was kept. But Range-Liberty, the reorganized Range used in the transaction, was rigidly limited as to management by the agreement and by the regulations of the War Shipping Administration. Outside this vehicle for dealing with the United States, Mrs. Rogers and Liberty supplied the capital, management, and agreement to share losses.

It is apparently contended that Mrs. Rogers received the proceeds of sale of property of Range-Liberty. But when the transaction was concluded, Range had all the property that it had at the beginning plus an increased capital. There were two contracts upon dissolution. The one between Liberty and Range-Liberty shows that no assets of the latter passed to the former. Liberty was substituted for Range-Liberty in the general agency contract. But such a contract was more in the nature of a certificate of public necessity and convenience and utility, and was not itself property but only furnished one of the conditions in virtue of which profits were a possibility to the joint enterprise.

■ The theory that the interest of Mrs. Rogers was solely that of a stockholder who received the purchase price of the property of the corporation is thus untenable, for Range-Liberty had nothing else to sell. Even if it be conceived that this wholly owned corporation had a share in the joint enterprise of Mrs. Rogers, Liberty and Range-Liberty, still the contracts of dissolution gave to each of the venturers appropriate compensation for the interest each had in the operation or business. The contribution of Range or Range-Liberty was negligible except the use of the corporate form for the convenience of administration. In the absence of a suggestion of fraud, we are all bound to acquiesce in the judgment of Liberty that the purchase price for the interest of Mrs. Rogers in the business was the amount paid her, and the value of the interest of Range was the value of the contract of dissolution between Range and Liberty.

Actually, there were but two contracting parties, Mrs. Rogers and Liberty. Mrs. Rogers owned everything upon her side. When she went into the deal, she contributed Range, of which she was the sole stockholder. When she came out of the deal, she still had Range, of which she was the sole stockholder. The situation was the same, except that she sold her interest in the business created by the joint capital and management of Mrs. Rogers and Liberty. Far from her interest in the transaction being solely that of a stockholder, she was the dominant factor. The corporations were tools, and she was the force which used them to create profits out of a joint enterprise. At all times Liberty dealt with Mrs. Rogers as the real party in interest. The joint venture would not have been possible without the contributions of Mrs. Rogers. Under these circumstances, it cannot even plausibly be argued that, simply because the corporate form was continued, there must be more money paid to the United States as income tax.

Finally, there was a sale of the interest of the business held by Mrs. Rogers. Mrs. Rogers did not thereby assign future profits or income. She was by no means sure that there would be either profits or income over a given period, as the parties had originally contemplated and agreed to assume losses. Mrs. Rogers "parted with the title to the corpus of the estate from which the income was expected to be produced." The distinction between this situation and the cancellation of a lease such as in Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168, cited by the Tax Court, has been conclusively pointed out in the opinion, United States v. Landreth, 5 Cir., 164·F.2d 340, 341.

The decision of the Tax Court was correct as to the $11,293.26 received by Mrs. Rogers from Range-Liberty. The conclusion, that $8,706.74 received by Mrs. Rogers

from Liberty was income as distinguished from capital gain over a long term, was erroneous. The decision of the Tax Court will be thus reversed in part and will be affirmed in part.